*111 NY 538*<br>*157 · 268*

HENRY L. ROGERS, Executor, etc., et al., Respondents, *v.* FRANK J. SQUIRES, Appellant.

Where an administrator transferred promissory notes belonging to the estate to the sureties upon his official bond as security against their liability, — *Held,* that the pledgees had such title as enabled them to recover thereon against the maker; that while they must be deemed to have known that the notes were assets of the estate and took them at their peril, if the transfer was in any respect a misappropriation, the debtor, defending solely in that character, could not raise the question.

The notes were also pledged as security for any advances the assignees

might make in payment of a judgment against the estate upon which the sureties were liable. *Held,* that whatever may have been the right of the sureties previous thereto, upon making the advances their title as pledgees became good.

The maker of the notes was a son of the intestate, as was also the administrator ; the former sold and transferred by deed all his interests in the estate, " including his distributive share," to the latter. *Held,* that the transfer did not discharge the maker from his liability upon the notes ; that no arrangement between him and the administrator, acting in his individual capacity, would release him from his liability to the estate, at least unless the administrator assumed such payment, and that no such assumption could be implied from the transfer ; on the contrary, it implied a collection of all the assets and payments by him of his notes ; that while the administrator, in case there had been no transfer to him, could have applied the notes in payment of the maker's distributive share, he was not bound so to do, but he or his assignee could sue and collect them, and that to such an action it would have been no defense that the defendant, as next of kin, upon final settlement, would be entitled to recover from the estate a sum larger than his debt.

(Argued December 12, 1884 ; decided January 20, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 24, 1882, which affirmed a judgment in favor of plaintiffs, entered upon a verdict. (Mem. of decision below, 26 Hun, 388.)

This action was brought upon eight promissory notes executed by defendant to his father, D. C. Squires, who died intestate. Jerome Squires, another son, was appointed administrator of the estate, and the notes, as part of the assets, came into his hands. He indorsed and transferred them to the original plaintiffs herein, who were sureties upon his official bond, to secure them for their liability thereon, and also for any sums advanced by them in payment of a judgment against the estate. The surrogate ordered the prosecution of the said bond, and the sureties thereupon paid the amount thereof. Further facts appear in the opinion.

*B. T. Wright* for appellant. The court should have allowed the defendant to prove that the money received on the

notes was used to pay his expenses at school, and for no other purpose. (*Hill* v. *Heermans*, 22 Hun, 455; *Wadsworth* v. *Heermans*, 85 N. Y. 639; *Franklin* v. *Pinkney*, 18 Abb. Pr. 186.) The consideration of promissory notes, the circumstances under which they are given, and the intention and understanding of the parties thereto may be always shown, as between themselves. (*Juillard* v. *Chaffee*, 13 Weekly Dig. 17; 92 N. Y. 529; *Tillotsen* v. *Rae*, 22 id. 122; *Slade* v. *Halsted*, 7 Cow. 321; *De Lavallette* v. *Wendt*, 75 N. Y. 579; *Seymour* v. *Cowing*, 1 Keyes, 532.) A party taking title to a non-negotiable note, or one overdue, takes it subject to all off-sets, counter-claims, defenses and equities existing against it. (*Juillard* v. *Chaffee*, 13 Weekly Dig. 17; *S. C.*, 92 N. Y. 529.) The sale and transfer by the defendant operated as a payment of the notes, or at least discharged the defendant's liability therefor. (*Wright* v. *Austin*, 56 Barb. 13; *In re Estate of Michael Tiernan*, 1 Weekly Dig. 560; *Smith* v. *Kearney*, 2 Barb. Ch. 533.) There was no final settlement of the estate. (*Barrick* v. *Austin*, 21 Barb. 241; 3 R. S. (Banks' 5th ed.) 161, § 42; 2 R. S. 77, § 42; Redfield's S. L. & Pr. Surr. Cts. [2d ed.] 394; *Annett* v. *Kerr*, 2 Robt. 556; Court of Appeals, October 4, 1881; *Hood* v. *Hood*, 24 Alb. L. J. 434; *Scofield* v. *Churchill*, 72 N. Y. 565; *Thayer* v. *Clark*, 4 Abb. Ct. App. Dec. 391.) A transfer of a note due to an estate by an administrator in payment of his own debt gives to the assignee with notice no right of recovery. (*Scott* v. *Searles*, 7 Smedes & Marsh. 498; 1 Wait's Act. and Def. 587; *Miller* v. *Helen*, 2 Smedes & Marshall, 687; *Thomasson* v. *Brown*, 43 Ind. 203; *Prosser* v. *Leatherman*, 4 How. [Miss.] 237; *Carter* v. *Manf. Nat. Bk. of Lewiston*, 36 Am. Rep. 338; *Field* v. *Schiefflin*, 7 Johns. Ch. 150; *Sacia* v. *Berthond*, 17 Barb. 15.) The defendant is in a position to raise the question as to plaintiff's title. (Code of Civ. Pro., § 449; *Hayes* v. *Hathorn*, 74 N. Y. 486; *Moss* v. *Barton*, 12 Weekly Dig. 524.) The title of the executor or administrator is fiduciary and not beneficial. (*Peterson* v. *Chemical Bk.*, 32 N. Y. 21; *Carter* v. *Manf. Nat. Bk. of Lewiston*, 36 Am. Rep. 338;

71 Me. 448; *Hall* v. *Andrews*, 27 L. T. [N. S.] 195; 20 W. R. 799; 2 Jacob's Fisher's Dig. 5308; *Austin* v. *Monroe*, 47 N. Y. 336; *Rose* v. *Turner*, 21 Barb. 361; *Gray* v. *Hook*, 4 N. Y. 449.) The court erred in not granting the nonsuit on defendant's motion, but having overruled defendant's motion for a nonsuit on the grounds presented therefor, the court should have submitted the questions of fact in the case to the jury, as defendant requested, and taken their verdict upon the same. (*Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459; *Boyce* v. *Watrous*, 73 id. 597.) The facts, not simply the evidence, must be disputed to make the question one of law. (*Smith* v. *Coe*, 55 N. Y. 678.)

*M. M. Waters* for respondents. Plaintiffs as pledgees were entitled to maintain the action to recover the whole debt and hold the proceeds subject to the legal and equitable rights of the pledgors. (*Freeman* v. *Falconer*, 45 Supr. Ct. 383; *Allen* v. *Brown*, 44 N. Y. 228.) The maker of the notes cannot assail the plaintiffs' title on the ground of fraud or infirmity, as to other parties or interests not represented in the action. (*Sullivan* v. *Bonesteel*, 79 N. Y. 631.) The defendant as maker had no legal interest to inquire whether the plaintiffs paid any consideration for their title. (*Sheridan* v. *Mayor*, etc., 68 N. Y. 30; *Allen* v. *Brown*, 44 id. 228.) Equity will uphold the liability of the bondsmen upon their bond so far as it is beneficial to the estate. (*Wheeler* v. *Wheeler*, 9 Johns. 34.) The administrator had power to pledge. (*Freeman* v. *Falconer*, 45 Supr. Ct. 383; *Allen* v. *Brown*, 44 N. Y. 228; *Lietch* v. *Wells*, 48 id. 585; *Middlebrook* v. *Merchants' B'k*, 41 Barb. 490; *Peterson* v. *Chemical B'k*, 32 N. Y. 1; *Barlow* v. *Myers*, 24 Hun, 290.)

FINCH, J. There was no error in the refusal to admit evidence of the use to which the defendant applied the money which formed the consideration of the notes in suit. No defense upon this branch of the case existed which could make that use material. The letter of defendant's father furnished

no foundation for any agreement invalidating the notes; and the other evidence of the declarations of the intestate indicated only that, while he considered the notes valid obligations, he did not intend to enforce them.    The deceased, perhaps, meant to give the debt to his son, and discharge it as an act of kindness, but died without carrying that intention into effect.

Nor was there error in holding that the plaintiffs had such title to the notes as enabled them to sue the maker and enforce their collection.    It was true that the notes were assets of the estate, and were transferred by the indorsement of the administrator, and the pledgees must be deemed to have known that they were such assets and took them at their peril if the transfer was in any respect a misappropriation.    Such is the substance of the rule as declared in *Field* v. *Schieffelin* (7 Johns. Ch. 150, 160) where the English and American cases are very fully and carefully considered.    But none of the authorities indicate that the debtor, defending solely in that character, can raise the question.    They concede that the legal title passes, but subject to the equities of those interested in the estate, who may set it aside under certain circumstances, and reclaim for the use of the estate the assets misappropriated, or their proceeds.    But even in such case, as a general rule, the payment by the debtor to the assignee holding the title would be good, and an answer to any further claim, and he has no right to bring into controversy relations or equities with which he has no connection.    (*Sullivan* v. *Bonesteel,* 79 N. Y. 631.)    But there are no facts in this case which warrant the inference that the transfer in any manner worked a *devastavit*.    The assignees of the notes were sureties upon the official bond of the administrator.    The notes were pledged to them as security for their liability thus incurred.    Had there been no other basis for their title it might have proved defective; but the notes were pledged also as security for advances which the assignees might make in behalf of the administrator, having reference specially to a judgment against the estate upon which the sureties were liable.    Whatever may have been the right of the sureties previous to those advances, it is quite

clear that their title as pledgees became good at the date when they were made, subject only to some possible equity in the distributees if the estate proved insolvent. The sureties made such advances to an amount exceeding the aggregate of the notes, upon the faith of their pledge, and in payment of a debt which appears to have been a debt of the estate, and not a personal obligation of the administrator as an individual. What we know about it is only what appeared on the cross-examination of Crandall, one of the assignees. He said: That the plaintiffs in what he calls "the Balch case" had a claim against the Squires estate; that on that claim judgment was obtained and execution issued; that thereafter the surrogate ordered the prosecution of the administrator's bond; that in such action judgment was obtained for $3,200, which the sureties paid. Holding the notes for their reimbursement, the effect of the transfer to the sureties was that they did just what the administrator was bound to do by applying the assets of the estate in their hands to the payment of the debts of the estate. Nobody could possibly be harmed, for the dealing between the administrator and the defendant plainly indicates that there was a surplus of personal property belonging to the estate over and above its debts. The argument here was rested wholly on the fact that the surrogate ordered a prosecution of the bond, which was said to imply some unfaithfulness or disobedience of the administrator. It sufficiently appears what that was. Having assets applicable to a debt of the estate and enough to pay it he failed to do so. But his sureties liable for that default held a portion of such assets and themselves paid the debt. Practically, when they shall have recovered the amount of these notes, they will have been applied as they should have been to the debts of the estate. But it is argued that they may have been applied to costs which were the personal debt of the administrator. It is not shown that there were any costs; but if we presume that, there is no evidence that the notes were so applied, but on the contrary they seem to have been wholly insufficient to pay the debt itself; and if they were used for the payment of costs it would concern no-

body, unless some creditor of or person interested in the estate was harmed by it, and least of all this defendant. If the creditors and next of kin were paid, an appropriation of notes to costs would touch the assignor alone. So that we find no ground for charging misapplication or waste.

It is further insisted that the sale by the defendant of his interest in the estate of his father to his brother Jerome, who was the administrator, operated to free the defendant from any liability upon these notes. The transfer was by deed. The property sold was described as " all my right, title and interest of every name and kind in the estate or property of Dann C. Squires, deceased, including all my right, title and interest in the hereinafter mentioned several pieces and parcels of real estate ; also all my right and interest in all the personal property of the estate of said Dann C. Squires, including my distributive share in said personal property of said Dann C. Squires' estate." Outside of this written transfer, evidence was received under defendant's objection of a cotemporaneous parol agreement of defendant to pay these notes. The defendant denied any such agreement, and if the evidence of it was admissible, a question of fact was raised which ought to have gone to the jury. But the courts below assumed that no such parol agreement existed, and we must assume the same thing, and confine our conclusions to the effect of the written transfer, disregarding the alleged parol agreement entirely and treating it as wholly immaterial.

Somebody was required to pay these notes. They belonged to the estate and constituted a part of its assets, and it was the duty of the administrator to collect them. Either the defendant, as maker, or the administrator was bound to pay them, and no arrangement between the defendant and Jerome Squires, acting in his individual capacity, could release the defendant from his liability to the estate. Unless, therefore, Jerome Squires in some manner assumed their payment, they remained a debt payable to the administrator by the defendant. The written transfer contains no such assumption. Nothing in its terms refers to these notes or casts their burden upon the pur-

chaser. The deed expressly transfers to Jerome the defendant's distributive share. That share was his proportionate part of the amount realized from all the assets after payment of debts and expenses, and its transfer implies collection of all the assets good and collectible. It is quite true that the administrator had the right to apply the notes upon the defendant's distributive share, and that his assignee could not resist such an application. But in that event the purchaser of the distributive share would have got only part of it from the administrator and the defendant himself would have got the other part, and it would be only a portion of the entire distributive share sold which the purchaser would get and the seller deliver. But in such a case, whatever the administrator's right, he is not bound to exercise it if the debt is otherwise collectible. Instead of waiting to make the offset he may sue upon and collect the notes, or sell them to an assignee who can thus sue and collect. It is no defense to the debtor that he is also one of the next of kin and upon a final settlement may be entitled to receive from the estate a sum larger than his debt. The sale, therefore, by defendant of his interest in the personal estate, "including his distributive share," implied that he must pay his own debt as going in part to make up that share, and since Jerome Squires in no manner assumed or agreed to pay it, the effect of the deed was not to discharge the defendant's liability.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.