SALOME E. BUTLER

v.

JEANIE M. BUTLER *et al.*

164  171
82a  659

*Filed at Springfield November 10, 1896.*

1. PARTIES—*necessary parties to proceeding to remove trustees.* The *cestuis que trustent* in a fund created by will are necessary parties to a chancery proceeding to remove the trustees appointed by the will and appoint others in their place.

2. SAME—*appointment of new trustee is invalid as to beneficiaries not parties.* The removal of trustees named by a will and appointment of new ones by the court, in a chancery proceeding, are invalid as to beneficiaries in the trust who are not made parties, and the trustees so appointed cannot, by act or contract, bind the rights or interests of such beneficiaries.

3. TRUSTS—*turning over of trust funds to new trustee—when a wrongful diversion.* The turning over of trust funds to a new trustee appointed by the court in a chancery proceeding in which the former trustees were removed, is, as to beneficiaries who are not parties, a wrongful diversion of such funds.

4. SAME—*when trust funds are wrongfully diverted by trustee.* Where a specific sum of money is given by will to a trustee to invest as a fund, the investment of the money by him in the opening and operation of a coal mine is, in the absence of express authority, a wrongful diversion of such fund.

5. NOTICE—*effect of, by partner, that trust funds are wrongfully invested in partnership.* One who has notice that the investment by a trustee of trust funds in a partnership is a wrongful diversion of such fund, yet enters into such partnership, cannot, on the death of the trustee and the occupation of the partnership property by the reversioners in the trust, compel an accounting in equity from them for money invested in the partnership.

6. SAME—*effect of, as to lien.* One having notice that a trustee has wrongfully invested trust funds in the opening of a coal mine, who advances him money to develop the same, cannot, upon the death of the trustee and occupation by the reversioners in the trust, have his advances declared, in equity, a lien upon such mine.

7. IMPROVEMENTS—*when reimbursement allowed for money advanced in improving lands.* Reimbursement for improvements made upon lands of others through confidence in a defective title will not be allowed, except where the true owners seek relief in equity.

*Butler* v. *Butler*, 61 Ill. App. 51, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

McCLERNAND & BUTLER, and PALMER, SHUTT, DRENNAN & LESTER, for appellant:

Any acts done in good faith, for the manifest good of the trust, will be sustained. *Hildreth* v. *Pinkerton Academy,* 29 N. H. 227; *Mayfield* v. *Kilgoor,* 31 Md. 241; 27 Am. & Eng. Ency. of Law, 136; *Gisborn* v. *Insurance Co.* 142 U. S. 326.

Although a trustee has no authority to invest trust funds in business, still, where one stands as the savior of said business enterprise in its time of need, said enterprise should make him whole against subsequent liabilities which came to him by reason of the relationship he assumed to the enterprise in saving it. *Cheatham* v. *Rowland,* 92 N. C. 340; *Kearney* v. *Kearney,* 17 N. J. Eq. 59.

Any one held liable for the debts of a concern because of a relationship, from which benefit accrued to said concern, has recourse against the property of said concern for the debts he is held liable for, to the extent of the benefits so rendered. 17 Am. & Eng. Ency. of Law, 835, and notes; *Bank* v. *Butler,* 149 id. 575.

The right to participate in the profits and prosperity of a concern is inseparable from liability for its debts and reverses. 17 Am. & Eng. Ency. of Law, 836, and notes.

BROWN, WHEELER & BROWN, McGUIRE & SALZENSTEIN, DAVIS McKEOWN, and W. L. GROSS, for appellees:

In suits between the trustees and *cestuis que trust* in relation to the property, all the trustees and all the *cestuis que trust* must be before the court, either as plaintiffs or defendants. Perry on Trusts, secs. 875, 881.

In the absence of express authority the employment of trust funds in trade or speculation, or in a manufacturing establishment, will be a gross breach of trust. Perry on Trusts, sec. 454.

An abuse of trust confers no right on him who abuses it, or any one claiming in privity with him. *Bush* v. *Blanchard,* 19 Ill. 81.

In equity, where one makes improvements innocently, or through mistake, upon the land of another, he will not ordinarily be allowed to enforce a claim for reimbursement, as an actor, but only when the true owner seeks relief in equity. *Williams* v. *Vanderbilt,* 145 Ill. 238.

Mr. JUSTICE BAKER delivered the opinion of the court:

William Butler died testate on January 11, 1876. He left surviving him three children,—Salome E. Butler, the appellant, Speed Butler, since deceased, and Henry Wirt Butler. The sixth clause of the will was as follows:

"I do further devise to said Jacob Bunn and John W. Bunn, or the survivor, the sum of twenty-five thousand dollars ($25,000) in trust, that said trustees or the survivor will invest the same and keep the same invested, in their discretion, and after the payment of taxes and assessments upon said fund and upon real estate hereinafter devised for the use of my beloved son Speed Butler, will pay the remainder of the annual income arising therefrom, from time to time, as he may require such payments, to my said son Speed Butler during the full term of his natural life, and upon the further trust that after the death of my said son Speed Butler the annual income arising from said sum of $25,000 shall be divided into as many parts as my said son Speed shall leave heirs of his body surviving him, and including and counting as one of such heirs Jeanie M. Butler, the present wife of the said Speed Butler, as long and during the time she may remain unmarried and the widow of the said Speed, and will pay to the said Jeanie M. Butler as long as she remains unmarried and the widow of the said Speed, annually, one child's part of the remainder of the said income, and will annually pay to the guardian or guardians of such child or children of the said Speed, to each,

one child's part of said remaining income until they respectively arrive at the age of twenty-one years, and will, as such child or children respectively arrive at the age of twenty-one years, pay to each its proportion of said sum of $25,000 and the accumulations thereof, reserving however, therefrom, a sum sufficient to pay to said Jeanie M. Butler said one child's part as long as she may live unmarried and the widow of the said Speed, and will upon the death of Jeanie M. Butler pay over to such child or children as aforesaid, or upon the marriage of the said Jeanie M. Butler will pay the same to such child or children as aforesaid. And upon the further trust, that if the said Speed should die and leave surviving him no child or children or decendants of child or children, said trustees will pay said sum of $25,000, with the then accumulations thereof, to my general heirs, reserving, however, a sum sufficient to produce said child's part for the use of Jeanie M. Butler as long as she lives as such widow and unmarried, and will, upon the death or marriage of the said Jeanie M. Butler, pay over such reserved portion to my general heirs."

A similar trust was created by the will, with the same trustees, as to the sum of $50,000 for the benefit of Salome E. Butler, the appellant, and also a similar trust, with same trustees, as to $25,000 for the benefit of Henry Wirt Butler. Still other trusts, both as to specified sums of money and as to specified real estate, were created by the will, and there were devises therein in fee, and not in trust; but for the purposes of this appeal it is unnecessary to particularly mention these other trusts and other devises.

On February 17, 1879, Salome E. Butler, Speed Butler and Henry Wirt Butler exhibited their bill in chancery in the Sangamon circuit court against said Jacob Bunn and John W. Bunn, trustees, and John T. Stuart, executor of the estate of said William Butler, deceased, and such proceedings were had in the cause as that, at the May

term, 1879, of the court, said Jacob Bunn and John W. Bunn resigned as trustees and their resignations were accepted by the court; and upon an accounting it was found by the court that the personal assets of the estate of the testator were insufficient to make the full amount of the money legacies, and thereupon the fund of $25,000 provided for in the sixth clause of the will was reduced to $20,001.54. The court having discharged the trustees designated by the testator, it appointed and constituted Speed Butler to be trustee under clause 6 of the will, and as such to receive said last mentioned sum of money, "to hold and deal with the same according to the several trusts and limitations attaching to the same under the testator's will." And similar decrees made Salome E. Butler and Henry Wirt Butler trustees, respectively, as to the separate funds in which they each, respectively, had life estates. In conformity with the provisions of the decree, the $20,001.54 that constituted the fund under said clause 6 of the will was paid over to Speed Butler. At the time of the death of the testator, and also at the time of the entry of the decree, the appellee Jeanie M. Butler, wife of said Speed, was living, as also were his three, and only three, children,—Jeanie E. Butler, (now Frazee,) Arnold W. Butler and Annie L. Butler, (afterward Loose,)—but neither the wife nor the children were made parties to the bill or proceeding. At that time said Speed had no other property save the prospective income from one hundred and twenty-nine acres of entailed land.

With a portion of the trust money received by him, Speed Butler bought from the McCrellis heirs sixty acres of land, and the language used in the deed was, "convey and warrant to Speed Butler, of the county of Sangamon and State of Illinois, trustee for Annie L. Butler, Elizabeth J. Butler and Arnold W. Butler." And with another portion he bought from the Chicago and Alton Railroad Company about five acres of land adjoining the sixty acres, and the deed therefor contained this language:

"Conveys and quit-claims to Speed Butler, trustee, Annie L. Butler, Jeanie E. Butler and Arnold W. Butler." He thereupon began to sink a coal shaft upon the sixty-five acres of land so purchased, and in so doing exhausted the residue of the money received from the trustees named in his father's will. He thereupon borrowed from appellant $13,000, and they joined in the execution of an agreement which bore date in May, 1881, and was recorded on June 14, 1881, the said Speed assuming therein to contract "as trustee of Annie L. Butler, Jeanie E. Butler and Arnold W. Butler," and to sell to appellant the one-fourth interest in the coal mine. Said instrument was before this court in a suit brought against appellant as surviving partner of Speed Butler, and it was held that she was, as to third parties, a co-partner. (*State Nat. Bank* v. *Butler*, 149 Ill. 575.) And on the same 14th day of June, 1881, said Speed Butler caused to be recorded in the recorder's office a deed bearing date the preceding day, wherein he, naming himself "trustee for Annie L. Butler, Jeanie E. Butler and Arnold W. Butler," assumed to convey and warrant to appellant the one-fourth interest in the mine. Both the agreement and the deed were afterward retained in his possession, and it seems that appellant signed the contract without reading it, her brother informing her that it was a security for the $13,000 borrowed from her, and she afterwards, in 1884, loaned him an additional $5000. The mine was opened and developed during the year 1881, and during that and the three succeeding years Speed Butler took large quantities of coal therefrom. On April 8, 1885, he died, insolvent and very considerably in debt. Since the death of Speed Butler the appellees, who are the beneficiaries, as reversioners, under the trust created by the sixth clause of the will of William Butler, have been in the possession and control of the mine and of the lands connected therewith, and have received the rents, issues and profits of the same.

Appellant filed her original bill herein on May 12, 1894. On March 1, 1895, her amended bill, upon which the hearing was had, was filed by leave of court. Upon the coming in of answers and replications the cause was submitted to the circuit court upon the pleadings, exhibits and testimony, and that court dismissed the original and cross-bills for want of equity, and that decree was subsequently affirmed by the Appellate Court.

It is stated by appellant that the suit is for an accounting and recovery by one partner held liable for partnership debts as a partner, against the parties in possession of the partnership property. The case seems to have a dual aspect. It is claimed, first, that appellant entered into a co-partnership agreement with Speed Butler in a coal mining venture, and that appellees, having succeeded to the rights of said Speed, and being in the possession and enjoyment of the partnership property, are liable to account to appellant in respect to the said partnership property; and second, that appellant having loaned and advanced to Speed Butler moneys which were used in developing the coal mine of appellees, is, in equity, entitled to a lien for the recovery of such moneys.

The wife and children of Speed Butler were *cestuis que trust* in the fund created by the sixth clause of the will, and therefore necessary parties to the chancery proceeding wherein the trustees named in the will were removed and a new trustee appointed in their place. Said wife. and children not being parties, the appointment made was invalid as to them, and gave to the trustee appointed no authority to make any contract or do any act that would be binding upon their reversionary rights and interests. The turning of the trust fund over to him was, as to them, a wrongful diversion of it from the hands of those rightfully entitled to the custody and care of it. It was a specific sum of money that was devised to the trustees, and they were to "keep the same invested, in their discretion," and, after the payment of taxes on "said

164—12

fund" and on certain other mentioned property, pay the income arising therefrom to the life tenant, and after his decease to the reversioners in designated proportions, and at the respective times specified in the will pay to each reversioner his or her fixed "proportion of said sum and the accumulations thereof." It is plain from the provisions of said clause and from the language used therein that it was the intention of the testator that the trustees should invest said money and keep it invested, as a fund, in interest-bearing securities that were readily convertible into money, and when Speed Butler used the money in purchasing lands and in opening a coal mine thereon, and in mining operations, such acts were a perversion of the fund. And this would be so even if it were true, which it is not, that he was lawfully, in respect to the rights of appellees, substituted as trustee in the place and stead of the testamentary trustees. It was the mandate of the decree appointing him trustee and under which he received the money, that he should "hold and deal with the same according to the several trusts and limitations attaching to the same under the said testator's will and the provisions thereof."

Appellant was a co-complainant with Speed Butler in the bill wherein the decree was obtained which took the trust fund out of the hands of the trustees named in the will and placed it in the possession and under the control of said Butler. She, of course, had full knowledge that none of the appellees, or those to whose interests they have succeeded, were parties to the proceeding or bound by the decree entered therein. She, presumably, had full notice of the contents of the will of her father, under which she took and held so many and such large interests, and of the provisions of the decree of court rendered at her instance. The recorded deeds from the McCrellis heirs and from the Chicago and Alton Railroad Company charged her with constructive notice that the trust fund had in part been invested in the lands on which the mine

was located. The recitals in the agreement of May, 1881, which she signed, show that she therein assumed to deal with Speed Butler "as trustee" of appellees. From the other evidence in the record, and from the evidence as a whole, there can be no doubt she knew that the moneys that were invested in the lands and in the mine were the trust fund created by the sixth clause of the will, and in which the wife and children of her brother had the reversionary interest. Knowing all this, she was bound to know that in the absence of express authority said fund could not be employed in trade or in speculation or in the opening and operating of coal mines. She was also bound to take notice that without such special authority the trust fund or property could not be embarked in a co-partnership business.

The case of *State Nat. Bank* v. *Butler*, 149 Ill. 575, which is largely relied on by appellant, falls far short of showing that there was a valid partnership, for the indebtedness of which the trust property would be liable. That decision merely held that under the agreement signed by Speed Butler and appellant, and the circumstances of the case, she, appellant, was liable as a partner for the debt there in question, and as to third parties. It was there expressly said: "No question as to the liability of the trust estate of any *cestui que trust* arises on this record."

It is wholly immaterial whether by the deeds from the McCrellis heirs and from the railroad company the titles to the several tracts of land vested in Speed Butler, or by force of the Statute of Uses the complete legal titles vested in his infant children named in the conveyances. As we have already seen, appellant is chargeable with notice of the trust and of the rights, interests and equities of appellees in the lands and mining property, and it is the settled doctrine of courts of chancery that *cestuis que trust* may pursue the proceeds of trust property, and charge with the original trust any property in which they

may be invested, as against all who have actual or presumptive notice of the trust.    *Breit* v. *Yeaton*, 101 Ill. 242.

It is urged that the trust money was already invested in the lands and in the coal mine, and was exhausted, and the mining plant still incomplete and unproductive, when the money of appellant came to the aid of the enterprise and saved the trust moneys from being entirely lost. It is at least doubtful whether the advancement of the money which enabled Speed Butler to finish opening up the mine and to operate it for four years or more was for the best interest of or beneficial to the reversioners. Within that time he took out and exhausted the coal under about one-third of the entire tract of land, and considering the proximity of the land to the lines of the Chicago and Alton and the Wabash railroads, it may well be questioned whether the completion and working of the mine left the property, after the expiration of the life interest of Speed Butler therein, more valuable than it would have been without the expenditure of the moneys of appellant.    Besides this, reimbursement for improvements made upon the lands of others through confidence in a defective title will not be allowed, except where the true owners are compelled to come into court and seek relief in equity,—and here it is appellant, and not appellees, that brought suit, and the latter are asking no relief. *Williams* v. *Vanderbilt*, 145 Ill. 238.

In contemplation of a court of equity appellees do not own the land and property as heirs-at-law of Speed Butler, but as reversioners under the will of William Butler. They do not stand in the shoes of the former, but are *cestuis que trust* whose rights and interests have been jeopardized and injured by his misconduct, and the acts and doings of appellant were in furtherance of his maladministration of their estate.

There is no error in the decree of the circuit court or judgment of the Appellate Court.    They are affirmed.

*Judgment affirmed.*