## FIRST NAT. BANK OF HOUSTON v. WEINER.   (No. 8387.)

(Court of Civil Appeals of Texas. Galveston. June 2, 1923. Rehearing Denied. June 28, 1923.)

**1. Appeal and error ⬳80(3)—Order appointing trustee and requiring report from receiver predecessor held interlocutory.**

In view of Rev. St. art. 1997, providing that there shall be but one final judgment, an order designating a trustee, made immediately effective, but requiring a report and bond from the receiver predecessor, thereby leaving open at some future term action on the receiver's report, amount of bond, etc., was interlocutory, and not final.

**2. Trusts ⬳213—Bank accepting trustee's note with accompanying collateral belonging to trust held charged with knowledge of limitation of trustee's authority.**

Where a will created a trust estate with power in a trustee of control and management, sale and resale, investment and reinvestment, and otherwise to change the form of securities, and required no trustee bond and no personal responsibility attached, unless through failure to exercise the care which the law required of such trustee, the powers of the trustee stopped short of permitting him to invest the estate in an uncertain and hazardous mercantile copartnership, and where a bank, with knowledge of the powers of the trustee, accepted trustee's notes with collateral belonging to the trust, it was charged with knowledge of that limitation on his authority.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by John Weiner, trustee, against the First National Bank of Houston. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 245 S. W. 474.

L. B. Moody and Boyles, Brown & Scott, all of Houston, for appellant.

Woods, King & John, of Houston, for appellee.

GRAVES, J. Appellee, John Weiner, as substitute trustee of the residuary estate of Josie E. Bell, deceased, sued appellant, First National Bank of Houston, alleging that it was wrongfully in possession of two notes belonging to the trust estate, one for $26,000 executed by the bishop of Galveston and the other for $10,000 executed by the pastor of the Annunciation Church of Houston, on

which it was collecting interest and credits on the principal, seeking a judgment for possession of the notes and of the amounts the bank had collected thereon with legal interest.

In answer, the appellant bank first challenged, by plea in abatement, the authority of the new trustee to bring suit for the estate at all, claiming that he had no right to act in such capacity, and then further alleged that it was in possession of the two notes sued for as pledges from the former trustee of the Bell estate, James Weiner, and that it held them as collateral security to a note for $29,683 executed in its favor about July 22, 1920, by the W. Coppinger Auto Company, W. Coppinger, and James Weiner, as trustee of the Josie E. Bell estate at that time; that this $29,683 note had not been paid at maturity, and, pursuant to its rights in the circumstances, the bank had proceeded to sell other securities it held therefor and to also collect payments made on the two collateral notes referred to until an excess of $3,847 over the amount due it on the $29,683 note had been received, which excess, together with the two collateral notes as they then stood, it tendered into court for the benefit of the Josie E. Bell estate in satisfaction of the bank's liability arising out of its connection with the two notes the suit involved.

To this defense the appellee countered with a sworn plea to the effect that James Weiner, as trustee, had no authority, under the provisions of Josie E. Bell's will, or otherwise, to so pledge the property of the estate, that his attempt to do it was void, and that the estate still owned the two notes so attempted to be put up as collateral and all moneys that had been paid the bank thereon. The court, hearing the case without a jury, entered judgment for the appellee for possession of the notes and all amounts collected by appellant thereon, with legal interest to date of judgment, totaling $16,628.56. From that decree the bank presents this appeal.

Two of the points now again presented have been heretofore passed upon by this court in prior litigation inter sese by the beneficiaries under the trust created by Mrs. Bell's will. See Weiner v. Weiner (Tex. Civ. App.) 245 S. W. 474. It was there held (1) that the appointment by the trial court, at its December, 1921, term, of John Weiner as trustee of the estate in succession of the Guardian Trust Company was not subject to collateral attack; (2) that the provisions of the will did not interdict the court, in the exercise of its equity powers, from removing a trustee for dereliction in duty and naming his successor.

Despite a most able attack in the present suit upon those holdings, which have again been carefully considered in the light of such additional circumstances bearing there-on as the record now before us carries, we must adhere to both conclusions; in doing so, however, there must be added a further one to the effect that the October, 1921, order of the court below making the Guardian Trust Company trustee should be held to have been interlocutory only and not a final one, as our former opinion indicated we were then inclined to regard it. The controlling facts affecting the matter are stated in that opinion and may be incorporated here by reference to it, as cited supra, without repetition; the trial court again found them to exist in this instance, as its conclusions of fact now before us evidence.

[1] As before recited, that order designating the trust company as trustee in October was made effective immediately, but it further required a report of its predecessor, the receiver, and a bond from it, thereby leaving open for determination at some future term such matters as the receipt and action upon the receiver's report, the valuation of the residuary estate as a basis for the amount and character of bond to be required of the substitute trustee, etc. The applicable article of our statutes (R. S. art. 1997), provides that there shall be but one final judgment, and our courts have held, specifically in a case where a receiver's report was yet to be filed, that—

"By various gradations, the interlocutory decree may be made to approximate the final determination, until the line of discrimination becomes so faint as not to be readily perceived."

See Leyhe v. McNamara (Tex. Com. App.) 243 S. W. 1074.

We think this is a parallel case. We are likewise confirmed as to the correctness of the second holding made in the former cause, and deem it unnecessary to add to what was there said upon that question.

The trial court further found that John Weiner, after having been so appointed substitute trustee at the December, 1921, term, had as such given an approved bond for $20,000, and was at the time of instituting this suit the duly acting trustee of the estate. In view of what has been said, that finding must here be approved and the assignments questioning the appellee's authority to bring the suit overruled.

The bank further earnestly contends, however, that it was authorized to make the $29,683 loan to James Weiner as trustee of the estate and to receive from him in that capacity the pledge of the two notes belonging to the estate as collateral; its proposition in that connection being in hæc verbis this:

"Where an instrument creating a trust confides in the trustee the absolute control and management of the estate, and where the trustee has already invested the funds of the trusteeship in a partnership business, and in his judgment it is necessary to borrow funds to

protect the estate from loss, which he believes is imminent (by reason of his original investment and contracts made), and where, in the exercise of that discretion imposed solely in him, he states to the bank that it is necessary to borrow money to protect the estate from loss, the bank, acting in good faith and relying on said trustee's judgment that it is necessary, is authorized to make a loan to such trustee and to receive from him a pledge of property as collateral." ·

The pertinent facts affecting this feature of the cause, in addition to what has already been incidentally recited, may be thus summarized: James Weiner, on July 22, 1920, the date of the $29,683 note to the bank and of the pledge as collateral thereto of the two notes the estate then owned, was its duly appointed, authorized, and acting trustee, and his transaction with the bank in reference thereto occurred in these circumstances, as reflected by the sixth and seventh fact findings of the court below:

"VI. When the first note above described in paragraph III hereof was executed to the bank, James Weiner informed the bank that he, as trustee of the residuary estate of Josie E. Bell, deceased, had entered with Walter Coppinger into a business partnership for the purpose of buying automobiles from manufacturers, etc., and selling them retail in the Houston market, and that a shipment of cars was coming into Houston which had to be paid for, and that in order to protect the investment of the estate in the automobile business it was necessary to borrow funds to pay for said cars on arrival, and the agent of the bank, in making the loan, made the same and paid over the money to the W. Coppinger Auto Company, taking as evidence of the loan the note first above described, and as security for the payment thereof the automobiles above described and the notes pledged to it by James Weiner, trustee, which it knew were the property of the Josie E. Bell residuary estate. The bank cashier testified, and I so find the fact to be, that the money was loaned by the bank to a copartnership known as the W. Coppinger Auto Company on the said cashier's information and firm belief that James Weiner, trustee of the estate, of and as such trustee, was a member of the copartnership, and that the loan was really made on the responsibility and solvency of the Josie E. Bell estate, and would not have been made by the bank but for the cashier's belief that James Weiner had authority to pledge the estate's notes for the loan actually so made to the partnership.

"VII. I further find that the bank instructed its attorney to read the will of Josie E. Bell to ascertain whether the trustee had power to procure the loan and make the pledge; that the bank's said attorney familiarized himself with the provisions of the will of Josie E. Bell, and informed the cashier of the bank that in his opinion James Weiner, trustee, had sufficient authority under the will to procure the loan and make the pledge."

The provisions from the will under which it is claimed the authority thus contended for proceeded were as follows:

"For and during the natural life of my sister, his mother, Mary C. Weiner, of New York City, the said James Weiner shall have the full power of control and management, sale and resale, investment and reinvestment, to convert or otherwise change the form of the securities, real estate and money for the best interest of the said trust, in the wise and proper management and control thereof; and all income derived from said trust, after deducting the amount hereinafter allowed him for his services in managing said trust, he shall pay over to my sister the said income, to be hers absolutely; but it is not the intention of this instrument that she shall acquire the fee-simple title to said property, but the same shall be vested, for the purpose of this trust, in him and upon the death of his said mother, my said sister, James Weiner shall distribute and divide all of the said property remaining in his hands including the amount originally bequeathed, and any accumulated by way of income, if any, between his brothers and sisters and himself in equal shares, he to have the sole and exclusive discretion in the manner of such division, and shall distribute to each of said children his proportionate interest and share in said estate in such securities, properties or moneys as to him may seem just and right.

"It is my further will, and I so direct, that no trustee or any substitute to carry out any of the trusts of this will shall be required to give or make a bond for the handling and management of said trust estate; it being my intention herein to repose in the trustees selected by me full and absolute confidence.

"It is my further will, and I so direct, that it is not the purpose of this will to hold any trustee herein named to any absolute responsibility for the care and management of said funds, but only that in the handling of the funds and in the obligation to pay the same, principal and interest over to the beneficiaries as herein provided he shall exercise that degree of care provided by law, and there shall be no personal responsibility upon the said trustees for any loss or diminution of the funds while in their hands, unless the same occurs through failure to exercise the care which the law requires."

The authorities cited in support of the proposition are: Faulk v. Dashiell, 62 Tex. 642, 50 Am. Rep. 542; Danish v. Disbrow, 51 Tex. 235; Tomlinson v. Drought & Co. (Tex. Civ. App.) 127 S. W. 262; Willis v. Braucher, 79 Ohio St. 290, 87 N. E. 185, 44 L. R. A. (N. S.) 873, 16 Ann. Cas. 66.

[2] We are unable to sustain appellant's position; whatever may be said as to the breadth of these powers of the trustee as gleaned from the quoted provisions of the will, we think they must, under general and fundamental law, be held to have at least stopped short of permitting him to violate his trust; that his attempted embarkation of the estate he represented upon the uncertain and hazardous seas of a mercantile copartnership amounted to a breach of his fiduciary duties; and that the bank, when it accepted his note and its accompanying collateral in the circumstances shown, was charged with

knowledge of that limitation upon his authority. If that be true, the rule applied in the cases appellant relies on cannot control here. That it is true we think demonstrable by a brief consideration of the effect of the facts accompanying this transaction and of some of the authorities announcing the principle stated.

In this instance the bank knew James Weiner's precise status; it had before it the recitations of the will; the two notes he attempted to so pledge to it showed upon their face that they belonged to the trust estate; it was directly informed that he had already in his representative capacity for the estate, put some of its funds into the mercantile copartnership, had as such endeavored to become a member thereof, and that the estate's property he was so undertaking to pledge was in security for an indebtedness the copartnership was then incurring to the bank; so knowing, it expressly loaned the money to the copartnership. In so doing, as we read the authorities, it aided and abetted the trustee, acting, however, in the best of good faith upon its own part, as all the evidence shows, in committing an unauthorized breach of his trust, and in consequence cannot hold the estate responsible.

It is, of course, in view of the language of the will, not contended here that there was any express authority for the trustee to so use the property of the estate; in its absence, it is not thought that he had any under the general principles of equity jurisprudence. The question is not one of whether or not the bank was either bound to ascertain the necessity for the loan or to see to the application of the proceeds, as were the issues determined in the cases appellant cites, but one of the bank's knowingly loaning money for a purpose that constituted a breach of duty on the part of the trustee; having such knowledge, it could not in consequence assume that the loan was for a purpose within the trust, and hence not concern itself with what was done with the fund. By analogy, the holding of our Supreme Court in U. S. F. & G. Co. v. Adoue et al., 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667, with reference to bank deposits, furnishes an illustration. After first stating that "if it be deposited by one as trustee, the depositor, as trustee, has the right to withdraw it, and the bank, in the absence of knowledge or notice to the contrary, would be bound to assume that the trustee would appropriate the money, when drawn, to a proper use," the court concludes:

"But if the bank has notice or knowledge that a breach of the trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then it will be undoubtedly liable."

That view is reiterated through Judge Ramsey on a rehearing of the cause. 104 Tex. 379, 138 S. W. 384.

In such a situation it seems to be generally recognized, as the court states in Warren v. Bank of Rochester, 157 N. Y. 259, 51 N. E. 1036, 43 L. R. A. 259, 68 Am. St. Rep. 777:

"It is a well-established and elementary principle of the law relating to the rights and liabilities of trustees that, in the absence of an express and sufficient authority therefor, the employment of trust property in trade or speculation, or in manufacturing, is a gross breach of trust upon the part of the trustee. This rule applies even where he simply continues the business or trade of a testator. It is the duty of a trustee to close up the trade or business, to withdraw the funds, and invest them in proper security at the earliest convenient moment.

"Another principle firmly established by the cases is that trust funds invested by trustees in the hands of third persons, who have knowledge of their character, still remain impressed with the obligation of the trust in the hands of the holder, and are subject to be reclaimed and restored to the trust fund. Wilmerding v. McKesson, 103 N. Y. 329, 336; Wetmore v. Porter, 92 N. Y. 76; Rogers v. Squires, 98 N. Y. 49; Clark v. Hougham, 2 Barn. & C. 149; Perry, Tr. §§ 828, 832; Wms. Ex'rs, p. 801; Field v. Schieffelin, 7 Johns. Ch. 150, 11 Am. Dec. 441. It is beyond the power of a trustee to bind the estate he represents to any use of its funds by contract with third persons who have knowledge of the character of the property transferred, except in the ordinary and usual *  *  * furtherance of its object. Deobold v. Opperman, 11 N. Y. 531, 538, 2 L. R. A. 644."

In substantiation of these declarations, see further, as to the first: Murphy-Bolanz Land Co. v. McKibben (Tex. Com. App.) 236 S. W. 80; Perry on Trusts, § 454; Butler v. Butler, 164 Ill. 171, 45 N. E. 426. As to the second: Mansfield v. Wardlaw (Tex. Civ. App.) 91 S. W. 863; 39 Cyc. pp. 384, 386; 26 R. C. L. p. 1303; Tuttle v. Greenfield First National Bank, 187 Mass. 533, 73 N. E. 560, 105 Am. St. Rep. 420.

In the Murphy-Bolanz Case our Commission of Appeals said:

"There must be no speculation upon the part of the trustee in dealing with the trust fund. The law does not give to him the same freedom of choice in making investments which may be and often is exercised by prudent business men in the conduct of their own affairs. Pomeroy's Eq. Juris. (4th Ed.) par. 1074, p. 2459."

In the Tuttle Case the Massachusetts court declared:

"At the time of the negotiations of the note the original payees, and subsequently the defendant bank, which held title under their indorsement, had notice by the form of the stock certificate and accompanying power of attorney, that the shares were held in trust. They were thus put upon inquiry, and must be held to have known what it was their duty to ascertain, that the trustee had no authority to pledge them as collateral security for an obligation that in law was his individual debt. O'Herron

v. Gray, 168 Mass. 573, 576 [60 Am. St. Rep. 411, 47 N. E. 429, 40 L. R. A. 498], and cases cited."

While the Texas Court of Civil Appeals in the Mansfield v. Wardlaw Case, in which writ of error was denied, thus deduces the concrete result flowing from the application of the second of these principles:

"Any person who receives property knowing that it is subject to a trust, and that it has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the cestui que trust, but also of the trustee, to reclaim possession of the property."

We think these pronouncements settle the controversy herein presented adversely to appellant's contentions.

All assignments of error have accordingly been overruled and the trial court's judgment affirmed.

Affirmed.