(No. 14238.—Reversed and remanded.)
ELIZABETH CHURCHILL, Appellant, *vs.* ABIGAIL MARR,
Appellee.

*Opinion filed December 22, 1921.*

1. WILLS—*statement of the rule in Shelley's case.* If an estate
of freehold is granted by an instrument and a remainder is limited
by the same instrument, either mediately or immediately, to the
heirs or heirs of the body of the person taking the freehold, by the
name of "heirs" as a class, without explanation, the person taking
the freehold estate takes also the remainder.

2. SAME—*meaning of the word "heirs."* The word "heirs" in-
dicates all those persons who upon the death of the immediate an-
cestor succeed to the estate from generation to generation.

3. SAME—*rule in Shelley's case does not apply if word "heirs"
is used as a word of purchase.* If the word "heirs" is so limited
in a devise as not to include the whole line of inheritable succes-
sion of the life tenant but only to designate the individuals who are
upon his death to succeed to the estate and who are themselves to
constitute the source of future descent the rule in *Shelley's case*
does not apply, and the estate subsequent to the life estate takes
effect as a contingent remainder to the heirs of the life tenant,
as purchasers.

4. SAME—*when devise to "surviving heirs" is not subject to rule
in Shelley's case.* Where a testator gives his wife the income from
his estate for her life and provides that at her death the same shall
go to his children until the last child shall have died, when the ex-
ecutor is to sell all the property and distribute the proceeds to "the
surviving heirs" of his children, the rule in *Shelley's case* will not
apply to give the children the fee, as the word "heirs" is not used
to designate the whole line of inheritable succession in each child
but only to designate the remainder-men who are to take at the
death of the last surviving life tenant.

5. SAME—*rule in Shelley's case does not apply where life tenant
has interest only in income of estate.* Where a testator gives his
wife and children the income of his estate for their lives, with di-
rections to the executors to collect rents and profits after the death
of any child until the death of the last surviving child, when they
are to sell the property and distribute the proceeds to the sur-
viving heirs of the children, the children take no interest as life
tenants in the land itself and the rule in *Shelley's case* has no ap-
plication, as they have only a contingent equitable interest in the
proceeds of the land as personal property.

6. SAME—*when executors take an estate in fee.* As trustees must take such estate as is necessary to enable them to perform the trust, executors who are required to manage and control the land of the testator and eventually to sell and convey it and distribute the proceeds take an estate in fee simple.

7. EQUITY—*when a court of equity will appoint a trustee.* A court of equity will not permit a trust properly created to fail for want of a trustee, and where for any reason a vacancy exists in the office the court will appoint a trustee where no other provision for the appointment exists.

8. SAME—*when court will appoint trustee under prayer for general relief although special relief must be denied.* Where a bill prays for construction of a will and partition accordingly and asks for general relief a demurrer should not be sustained although the prayer for special relief cannot be granted, where the bill shows that the complainant is entitled to the appointment of a trustee to take the place of executors who have died prior to the expiration of the period provided in the will for the distribution of the estate.

APPEAL from the Circuit Court of Fulton county; the Hon. GEORGE C. HILLYER, Judge, presiding.

C. B. ADAMS, and W. S. JEWELL, for appellant.

BURNETT M. CHIPERFIELD, and CLAUDE E. CHIPERFIELD, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Charles B. Churchill died in August, 1893. He left a widow, a son and three daughters surviving. His will was admitted to probate and so far as is material to the questions in this case disposed of his property as follows: Besides certain personal property he gave to his wife the right to occupy his residence as long as she lived. He made the following devise to his son:

"To my son, Franklin S. Churchill, I give, devise and bequeath my homestead property, the same being the northwest quarter of section thirty-two (32) and twenty-two (22) acres out of the southeast corner of the northwest quarter of section thirty-three (33), all in Canton township, in the county of Fulton and State of Illinois, to have and

hold the same for and during his natural lifetime, and I hereby direct that he shall limit his expenditures to the rental income and proceeds of said land. I also direct that he shall reside in my said residence along with my said wife, if my said wife shall so desire; and I further direct that my said son shall provide my said wife with fuel, board and all necessary supplies, and shall feed, stable and properly care for her carriage horses, carriage and harness so long as she shall live, all to be furnished and performed without expense to my said wife. At the death of my said son I will that the said lands become the inheritance of his children. Should he die leaving no children surviving him, I will that said lands be rented by my executors and the rental of same be divided equally among my children and my said wife, share and share alike."

There were some legacies given to the son and some directions in regard to the use of the timber on the twenty-two acres, but they are not material in this case.

The testator made a devise to his daughter Sarah as follows:

"To my daughter Sarah J. Churchill I give and bequeath the rents and proceeds of the west half of the northeast quarter of section thirty-two (32), in Joshua township, in said county of Fulton, so long as she shall live, provided, however, that my executors shall collect the rent and proceeds thereof and apply the same to payment of taxes first, then on mortgage liens now against said lands until said lien or liens are fully paid. Should my said daughter Sarah at her death leave no children surviving her, it is my will that my executors collect the rents and proceeds of said west half of said northeast quarter of said section thirty-three (33), in said town of Joshua, after said lien is paid, and divide the same equally among my then surviving children and my said wife, share and share alike, otherwise I will that said land shall become the inheritance of the children of said daughter Sarah who shall survive her."

To his daughter Elizabeth he made a devise of eighty acres of land in substantially the same words as the devise to Sarah; and he also made a devise to his daughter Abigail Marr of eighty acres of land which was in the same terms, except that the executors were not directed to collect the rents and pay the liens. The remainder was disposed of at her death in the same way as the devises to his other two daughters. Then followed a devise in the following words:

"It is my will that my executors rent to the best advantage my hotel property, the same being situated on parts of lots fifteen (15) and eighteen (18) in Jones' First addition to the town (now city) of Canton, in the said county of Fulton, same being known as the Churchill House, the rent of said hotel property to be applied and disposed of as follows: First, to payment of insurance, taxes and all necessary repairs and improvements. Second, to the payment of mortgage liens against said property, after said liens are paid and after paying insurance, taxes and repairs as before said. I direct that the rent of said hotel property, including the rent of the store-room therein, shall be paid to my said wife so long as she shall live, after her death I direct that it be paid to my children then surviving, share and share alike; and it is my will that said hotel property be rented for hotel purposes, to be known as the Churchill House, so long as any of my children shall live. When all are dead I direct that my executors sell the same, and my other property then belonging to my estate, and divide the proceeds equally among the surviving heirs of my children. I also direct that my executors rent the room on the first floor of said hotel property, now occupied as a store, for hotel purposes whenever they shall deem it expedient to do so. Any property, real or personal, that I may die possessed of not already disposed of in the foregoing, I hereby direct that my executors sell and dispose of the same and

3ᴖ0—20

divide the proceeds among my children and my wife, share and share alike to each."

The testator appointed his wife and son executrix and executor and directed that they should serve without bond. Letters testamentary were issued to them and all the debts and claims against the estate were paid. The son, Frank S. Churchill, died on September 8, 1901, leaving Minnie F. Churchill, his widow, and George S. Churchill, his only child. On March 6, 1907, Louise E. Churchill, the widow of Charles B. Churchill, died intestate without having been discharged as executrix, and on September 26, 1920, Sarah J. Churchill, who had married Chester B. Magoon, died, leaving her husband surviving her and no children.

In March, 1921, Elizabeth Churchill, one of the daughters, filed a bill in the circuit court of Fulton county against Abigail Marr, the other daughter, and George S. Churchill, the heir of Franklin S. Churchill, and others, for the partition of the land devised to Sarah J. Magoon and of the Churchill House property, alleging the facts which have been stated and these additional facts: That the Churchill House consists of a large three-story brick building built for a hotel and now in use for that purpose; that there is a certain room connected with it, and a part of the same property, used as a business house; that for several years the hotel and business house have been in charge of A. J. Taylor, deceased, heretofore appointed by the circuit court trustee thereof to collect the rents and income, pay the taxes, insurance and repairs on the property and to account to the complainant and Abigail Marr semi-annually for the remainder of the proceeds; that he died on February 12, 1921, leaving no one properly authorized to look after and care for the Churchill House property and without having accounted, as trustee, for the income and rents of the property for the year 1920 and prior years; that in his lifetime, without authority of law, Taylor contracted for a large amount of improvements and additions to the

Churchill House property, which will involve a large out-
lay, the exact amount of which is unknown to the complain-
ant, but she is informed and believes that the contemplated
improvements and changes will cost $14,000; that $4000
has already been expended under those contracts, and that
the completion of the work will practically ruin and bank-
rupt the Churchill House property, to the irreparable injury
and damage of the owners. The bill further represented
that Taylor, in his lifetime, without authority entered into
a contract leasing the eighty acres of land devised to Sarah
J. Magoon to John Churchill for the term of five years from
March 1, 1921, and Churchill is about to take possession of
the property, contrary to the rights of the complainant and
the defendants, who with her are the owners of it. John
Churchill, the tenants of the Churchill House property and
the heirs of Taylor are made parties to the bill, which prays
for an injunction against Taylor's heirs restraining them
from prosecuting the work on the Churchill House prop-
erty by reason of the contracts of Taylor, for a receiver
of that property to collect the rents and control the prop-
erty during the pendency of the bill, for a construction of
the will of Charles B. Churchill, and a decree that the com-
plainant and the defendants Abigail Marr and George S.
Churchill are seized of an equitable fee simple title in the
premises in question as tenants in common according to the
rule in *Shelley's case* in such cases held, determined and
declared, subject to the dower rights of Minnie F. Sherman
in the share of George S. Churchill, and the interest of Ches-
ter B. Magoon as the husband of Sarah J. Magoon, and for
partition. A demurrer filed by Abigail Marr was sustained,
and the complainant electing to stand by her bill, the court
dismissed it for want of equity, and she appealed.

The main contention of the appellant is that the devise
by the testator of the rents, issues and profits of the real
estate to his surviving children during their lifetime and
at their death the same to be sold and the proceeds thereof

equally divided among the surviving heirs of his children brings the case within the rule in *Shelley's case,* which has the effect to pass the title in fee simple to the complainant and the defendants Abigail Marr and George S. Churchill, and renders inoperative his direction that the hotel property be rented as long as any of his children should live, and when all are dead that his executor should sell the same, together with any other property of his estate, and divide the proceeds among the surviving heirs of his children.

Under the rule in *Shelley's case* if an estate of freehold is granted by any instrument and the remainder is limited by the same instrument, either mediately or immediately, to the heir or heirs of the body of the person taking the freehold estate by the name of "heirs" as a class, without explanation, the person taking the freehold estate takes also the remainder as well. The word "heirs" indicates all those persons who upon the death of the immediate ancestor succeed to the estate from generation to generation. If the words used are so limited as not to include the whole line of inheritable succession but only to designate the individuals who are upon the death of the ancestor to succeed to the estate and who are themselves to constitute the source of future descent, they are words of purchase. The rule is, that where to the word "heirs" are added words limiting its meaning to one or more persons who are to take and constitute a new source of inheritance or stock of descent,—that is, when the words used designate the remainder-men to take after the expiration of the life estate as the person or persons who at that time answer the description of heirs and limit the estate in remainder to such person and their heirs,—the rule in *Shelley's case* does not apply, but the estate subsequent to the life estate takes effect as a contingent remainder to the heirs of the life tenant, as purchasers. *Ætna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406.

In the devise of the hotel property the testator directs that the rent be paid to his wife so long as she shall live

and after her death it shall be paid to the testator's children then surviving, share and share alike; that the property shall be rented for hotel purposes as long as any of his children shall live, and "when all are dead I direct that my executors sell the same, and my other property then belonging to my estate, and divide the proceeds equally among the surviving heirs of my children." The heirs of the children are not all those persons who upon the death of the children succeed to their respective estates from generation to generation, but only those heirs who are surviving at the death of the last child are included. The words used to designate the remainder-men who are to take after the expiration of the life estate at the death of the last survivor of the children indicate as such remainder-men the persons who at that time answer the description of heirs and limit the estate to such persons and to their heirs and not to the heirs in general of the respective children who have previously died, and such estate takes effect as a contingent remainder to the heirs who are then living of all the children who have died.

Another objection to the application of the rule in *Shelley's case* is that the children of the testator took no interest in the remainder under his will. The devise to each child was, to receive the rents and profits of the land given to such child for life. If he died leaving children the land was given absolutely to the children. If he died leaving no children the executors were authorized to collect the rents and profits during the life of the surviving children and the widow, and when the last child had died the executors were directed to sell the property and distribute the proceeds to the surviving heirs. This gave a contingent equitable interest in the proceeds of the land as personal property, and not any interest in the land itself. (*Baker* v. *Copenbarger,* 15 Ill. 103; *Ebey* v. *Adams,* 135 id. 80; *Maginn* v. *McDevitt,* 269 id. 196; *Martin* v. *Martin,* 273 id. 595; *Grove* v. *Willard,* 280 id. 247.) Since the exec-

utors were required to manage and control the land and eventually to sell and convey it and distribute the proceeds they took an estate in fee simple, since a trustee must take such estate as is necessary to enable him to perform his trust. *Ebey* v. *Adams, supra; Emmerson* v. *Merritt,* 249 Ill. 538; *Maginn* v. *McDevitt, supra.*

With regard to the eighty-acre tract of land which was devised to Sarah J. Churchill for life, the appellant argues that the fee simple title to that land is now in her and Mrs. Marr and George S. Churchill because of the provision that the rents and proceeds should be divided equally among the children of the testator surviving at her death and the testator's wife, without making any final disposition of the fee. It is manifest that the direction that the executors divide the rents and profits among the surviving children was not intended to convey an equitable fee to them; that it was not intended to create a perpetual trust in the executors to collect and pay to the children, their heirs and grantees. The design of the testator, as shown by his whole will, was to give to each of his children such portion of his real estate as he thought proper for life, and in case of the death of either of the children leaving children, the land in which any child so dying had a life estate was to go to his or her children, but if any child died leaving no children then the real estate devised to such child was to come back to the executors, who were to have charge of the property, collect the rents and divide them equally among the surviving children and the widow until the death of the last surviving child, and then the whole was to be subject to the provision contained in the will for the final disposition of all the testator's estate, which directs that when all are dead the executors shall sell the Churchill House, and "my other property then belonging to my estate, and divide the proceeds equally among the surviving heirs of my children."

The question has not been argued, but the facts appear by the bill that the trust which was created by the testator

for the collection of the rents of his estate, the management of the hotel and the distribution of the proceeds among his children has now no trustee. The surviving executrix died many years ago. The trustee who was appointed by the court died shortly before the bill was filed. There is nobody charged with the duty of carrying out the trust. The appellant is interested in the property, in the collection of the rents and profits and their distribution and in the preservation of the property for the future. It is a proper case for the appointment of a trustee upon the application of any person interested. A court of equity will not permit a trust properly created to fail for want of a trustee, and where for any reason a vacancy exists in the office the court will appoint a trustee where no other provision for the appointment exists. (*French* v. *Northern Trust Co.* 197 Ill. 30.) Though the bill did not specifically ask for the appointment of a trustee, and the theory of the complainant was that the legal title had become vested in the surviving heirs of Charles B. Churchill and they were entitled to the partition which was prayed for, yet the bill stated facts which showed that the title was not so vested, that the complainant was mistaken in her judgment of the legal questions involved and the rights of the parties, and that she was entitled to have a trustee appointed. The bill prayed for general relief. Where a bill prays for general and special relief and the special relief cannot be granted, the court may grant any relief which is consistent with the facts alleged in the bill and proved by the evidence. (*VanZanten* v. *VanZanten,* 269 Ill. 491; *Struve* v. *Tatge,* 285 id. 103; *Atchison, Topeka and Santa Fe Railway Co.* v. *Stamp,* 290 id. 428; *Kelly* v. *Kelly,* 293 id. 169.) For this reason the demurrer should have been overruled.

The decree will be reversed and the cause will be remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*