In re Estate of Luther W. Conover, Deceased.
First National Bank of Chicago, Appellant, v. Edward
Morris and George S. Conover, Executors under
the Last Will and Testament of Luther W. Con-
over, Deceased, Appellees.

Gen. No. 39,815.

Opinion filed May 11, 1938. Rehearing denied
May 26, 1938.

Nat. M. Kahn, of Chicago, for appellant.

John M. Lee, of Chicago, for appellees Edward
Morris and George S. Conover; Earl V. Brown, of
Chicago, of counsel.

C. Lysle Smith, of Chicago, for appellee Mary Bob-
bitt Conover.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

The First National Bank of Chicago filed a claim against the estate of Luther W. Conover, deceased, in the probate court of Cook county and the claim was allowed in full as of the sixth class for $24,032, to be paid in due course of administration. The estate appealed to the circuit court of Cook county, and upon a trial *de novo,* the claim was disallowed.

It is claimed that the deceased was individually liable as a member of a partnership and also liable as one of the managing committee of the Highlands Company, an unincorporated association.

The form of the claim filed consists of a copy of a note which contains the signature of the deceased, L. W. Conover, as one of the five persons constituting the managing committee of the Highland Company, and after a description of the collateral securing the payment of said note, and affidavit of claim, appear the following particulars: "Balance of principal due on one certain principal promissory note of Highlands Company, a co-partnership comprised of the following partners, to-wit: William J. Harahan, Frank B. Harriman, Francis B. Bowes, George C. Bour, Clyde L. Day, Howard W. Hayes, George J. Williams, Garrietta C. Bour, Anna H. Bennett, Frances B. Scofield, George R. Bennett, Jr., Luther W. Conover, and others unknown to this claimant, dated September 4, 1935, payable to the order of Foreman-State National Bank, ninety days after date, in the amount of $28,000.00, with interest after maturity at 7 per cent per annum, and endorsed by said Foreman-State National Bank to The First National Bank of Chicago, which said note was executed by Frank B. Harriman, Chairman Managing Committee and by Clyde L. Day, Frank B. Harriman, Anna H. Bennett, Francis B. Bowes and Luther W. Conover, Managing Committee, Highlands Company, copy of which said note is attached hereto and

made a part hereof, and marked 'Exhibit B' . . . $24,000.00; Interest on said note at 6% per annum from March 15, 1937, to date of allowance, $32.00; Total amount of claim $24,032.00.''

It is the theory of the claimant that the estate of Luther W. Conover, deceased, is liable for the entire obligation, evidenced by the note, as a member of a partnership consisting of a number of persons who associated themselves together in a speculative real estate business under the trade name of ''Highlands Company,'' and that the claim should have been allowed in its entirety as a claim of the sixth class, to be paid in due course of administration after creditors having claims against the decedent individually would first be paid in full. It is the further theory of the claimant that the estate is so liable for the payment of said obligation irrespective of Mr. Conover's signature on the note as a member of the managing committee of the Highland Company.

It is the theory of the defendants, being the executors under the will of Luther W. Conover, deceased, that the Highlands Company was not a partnership but a business trust, and that the decedent, Luther W. Conover, was not liable individually as a partner for the payment of said obligation. It is the further theory of the defendants that the decedent, Luther W. Conover, as a member of the managing committee of the Highlands Company at the time the obligation in question was incurred, was, in effect, one of the trustees of the Highlands Company, and that said committee, as such trustees, controlled the company.

The claimant further contends that if the Highlands Company was a trust, the decedent was personally liable for the payment of the note as one of the trustees of the company, because of the failure of the articles of association of the company to exempt said committee from personal liability.

There is no dispute as to the facts; this leaves the question of law as to the nature of the entity of the so-called "Highlands Company," that question being, Was it a partnership?

The cause was tried on an oral stipulation of facts stated by the attorneys for the parties, in addition to the testimony and statements of one Mr. Johnson for the appellant and a Mr. Day, an original and continuous member of the Highlands Company since its incorporation, which stipulation of facts and testimony were made subject to objections as to materiality and relevancy.

The obligation was evidenced by the note introduced as Exhibit F, said note representing the balance of a debt for moneys loaned originally in 1928 to the company by the State Bank of Chicago. The deceased, Luther W. Conover, at the time of his death, during October, 1935, had been continuously since 1905, associated with a number of other persons in a speculative real estate business called the "Highlands Company." Said Highlands Company was organized August 15, 1905, and was to continue for a period of 20 years. The original parties forming this company conveyed certain land to the State Bank of Chicago, as trustee, which was subdivided and called "Jackson Park Highlands," and the dealings in this subdivision constituted the business of the Highlands Company. The original organization was evidenced by an agreement in writing which at the time of the trial was introduced in evidence as Exhibit "A," being the "Articles of Association." Originally there were 11 persons, including the deceased, who formed this organization and they conveyed the real estate to the aforesaid bank as trustee. The articles of association also provided for a managing committee which was vested with the sole and complete power to carry out the purposes of said association. The interest of the parties in the association was

divided into 32nds, and by certificates issued by said
trustee to the various members into fractional parts
of said entire interest. The trustee named was merely
to hold title to the real estate subject to the direction
and control of the so-called "Highlands Company."
The State Bank of Chicago was the first trustee and
subsequently was succeeded by the First National
Bank, appellant herein. The initial trustee, State
Bank of Chicago, by the terms of the instrument was
exempted from personal liability for any of the mort-
gages assumed by the Highlands Company. In this
contention it may be said that nowhere in this agree-
ment or in any documents introduced in evidence were
the members of the association or the managing com-
mittee also exempted from personal liability.

We also think another question for our consideration
and determination is whether the original parties to
this transaction in the formation of the Highlands
Company, created a trust known as a common law or
Massachusetts trust.

If. by the actions of said owners of the properties, a
Massachusetts trust was created, or one with similar
exemptions to it, then it follows there was no liability
on the part of any of the certificate holders. But, on
the contrary, if it remained a voluntary association or
partnership, then it follows they would jointly and
severally be liable and the estate of the deceased would
be liable as a partner. Much has been said and written
in determining the distinguishing difference between a
partnership and a so-called common law or Massachu-
setts trust. The instrument under which Conover and
his associates were acting was dated August 15, 1905,
and was for a period of 20 years, and on January 19,
1925 was extended to December 12, 1934.

It appears from the original agreement that the
articles of association were between Edward P. Skene,
William J. Harahan, Frank I. Bennett and Charles J.

Bour, all of the city of Chicago, and were known as parties of the first part, and William J. Mohr, Luther W. Conover, Clyde L. Day, Frank B. Harriman, Samuel G. Hatch, William L. Smith and Francis B. Bowes, who were also of Chicago, Illinois, and were known as parties of the second part. The State Bank of Chicago, trustee, was called the party of the third part.

The articles recited that whereas the parties or some of them are the owners of certain premises and they contemplated that the title to said premises be vested in the State Bank of Chicago, trustee, subject to the conditions of the deeds of conveyance and certain other restrictions and liens specifically mentioned therein, the same is conveyed to said trustee; that the trustee shall not become personally liable for the payment of any such incumbrance, charge or lien and that the conveyances to the said trustee are made and to be made for the purpose of carrying out the agreements made by and between the parties thereto, named as the parties of the first part and parties of the second part, forming and constituting the Highlands Company as therein mentioned shall be taken to include all the parties of the first part and the parties of the second part and that said parties, except said trustee, "hereby form themselves into *a voluntary association,* for the purpose of acquiring, holding, managing, improving, selling, disposing of and handling the premises above described, or any other real estate or personal property which may be acquired for the benefit of the Company and all improvements which may be placed on such real estate."

The agreement further recited that "for the purpose of procuring funds with which to make payment of the balance of the purchase price of said premises, making necessary street improvements and erecting houses thereon, certain members of the Company have respec-

tively and previously acquired title to and have encumbered various lots and portions of said premises (a list of which encumbrances, showing by whom the same have been made, the character, date, amount, terms of interest and maturity of such encumbrances, is hereto attached, marked 'Schedule A,' and made a part hereof), and simultaneously with the execution of this agreement, they respectively convey said various lots and portions of said premises to the said State Bank of Chicago, Trustee, for the purposes herein and in the deeds to said Trustee expressed, and for the benefit of the *Company*."

The agreement further recites:

"*It Is Hereby Agreed* that the personal liability of the makers of the notes and bonds executed by the various members of the Company, or any of them, and secured by trust deeds or mortgages on said premises, or any part thereof, shall become and be and the same is hereby declared to be the liability of the Company; and the Company hereby assumes and agrees to pay the indebtedness evidenced by such notes and bonds to the extent that its assets may reach."

The agreement then sets forth the interest of the parties in fractions of 32nds as their entire interest in the company.

The agreement further continuing, provides:

"*It Is Further Understood and Agreed* that the charges against said premises or any part thereof, including all expenses of improving, managing, operating and handling the same, shall be borne by the members of the Company, in proportion to their respective interests, and the avails and profits arising from the sale or disposal of said premises shall be divided among the members of the Company according to their respective interests, as shown by the records of the Company at the time of such division, and may be distributed in whole or in part among the members as the

Managing Committee may, from time to time, decide upon.''

With relation to the business affairs of the Company, the agreement provides as follows:

''The business and affairs of the Company shall be conducted by a Managing Committee, which shall consist of five (5) members of the Company, who shall hold office for one (1) year and until their successors are elected. . . . are declared to be the first Managing Committee and shall serve until the first Monday in November, 1906. Thereafter on the first Monday of November in each year, at an hour and place to be designated by the Managing Committee, an annual meeting of the members of the Company shall be held, at which time the members of a new Managing Committee shall be elected, and the out-going Managing Committee shall make a full and detailed report of the business of the Company for the fiscal year ending on the 30th day of the previous September. . . .

''A majority of the Managing Committee shall have full power to manage and control the business and affairs of the Company and to do all things, of every nature and character, incidental or conducive to the object of the Company, and to direct the Trustee in the disposition of the real estate herein described, or of any property which may hereafter be acquired or reacquired by the Trustee in accordance herewith, as said Managing Committee may deem it to the best interests of the Company, and also, through its treasurer, to receive and disburse all moneys and securities belonging to the Company; said Managing Committee shall pass on all contracts for improvement of said premises and construction of buildings thereon, and shall have full power to employ all agents for the sale of said premises, engage the services of any person or corporation in and about the business and operation of the Company that said Managing Committee may see fit. It shall be the duty of the Managing Commit-

tee to, from time to time, fix the prices at which said premises may be sold, as well as the terms of sale thereof, and the said Committee shall have full power to contract for the sale, exchange or disposal of said premises, or any part or parts thereof, or any securities derived by the Company from the sale of said premises, in such manner and upon such terms as to such Committee shall appear to be to the best interests of the Company.

" . . .

"*It Is Further Hereby Provided* that whenever it shall, in the opinion of all of the members of the Managing Committee, be necessary or expedient to borrow money for use in making improvements, or constructing buildings on said premises, or on any premises which may be acquired for the benefit of the Company, or to pay the principal sum or interest on any indebtedness secured by any lien on any such real estate or improvements, or to pay any taxes or special assessments which may be levied thereon, and interest or charges growing out of such taxes or assessments, or to pay any indebtedness, of any kind or nature, owing by the Company, or for use for the benefit of the Company, then such Managing Committee shall be and it is hereby authorized and empowered to borrow such money as may be necessary for such purposes and to, from time to time, obligate the Company for the repayment of the sums which may be so borrowed, together with lawful interest thereon, by the execution, in the name of the Company, of note or notes, or other evidence of indebtedness, and any instrument in writing to secure the payment of the same, which shall be countersigned by a majority of the members of the Managing Committee; and all of the assets and property, of every kind and nature, belonging to the Company shall thereupon be liable for the payment of such indebtedness."

The agreement further provides that the managing committee is authorized to levy a pro rata assessment upon each member of the Company as his interest appears on the records of the Company on the date levy is made and that the managing committee shall cause a written notice thereof to be mailed to each member 30 days prior to the time such assessment shall become due and payable; that such notice shall state the nature, amount of and purpose of levy and each member shall, within 30 days after the mailing of such notice pay or contribute to the treasurer of the Company, his, her or its portion of the total assessment; that in the event any member shall remain in default for a period of 10 days after such assessment shall become due and payable, as aforesaid, the other members of the Company, or any of them, may without notice advance said sum so due to the treasurer of the Company, and whether the amount of such assessment has been so advanced or not, the interest of such member in the Company and in the assets and property, of every kind and nature, belonging to the Company, or sufficient part of such interest, may be sold by the managing committee for the best price to be obtained, either at public or private sale, upon mailing to such defaulting member a notice of such intention to sell and from the proceeds of such sale there shall be paid the amount of such assessment and any other liability attaching to the interest, so sold, and the remainder, if any, be returned by the managing committee to such defaulting member on demand, upon the return of the certificate representing the interest of such defaulting member. And in case only a part of the interest of such defaulting member shall be sold, a new certificate, evidencing the interest remaining unsold, shall be issued to such member.

As before stated, the question here to be determined is whether a trust or a partnership existed. A very

enlightening opinion defining the difference between the two was written in the case of *Schumann-Heink v. Folsom,* 328 Ill. 321, 325, wherein the court said:

"The trust is a very comprehensive institution. It is as general and as elastic as contract. It originated and was reduced to practice under the jurisdiction of courts by the civil law, was expended and developed in the courts of chancery, and has been employed in nearly every field of human activity. Of late years it has been and is utilized in the field of commerce and trade as a substitute for the corporate or partnership organization. Such a trust is created by the execution of a declaration of trust by one or more trustees, to whom there has been or will presently be transferred the property or money which is to constitute the *corpus* of the trust. The interests of the several *cestui que trust* are represented by certificates showing the proportionate shares of the holders. Thus the *corpus* of the trust corresponds to the capital of the incorporated company, the trustees to the board of directors, the beneficiaries to the stockholders, the beneficial interests to shares of stock and the declaration of trust to the charter. But there are material differences, to be noted later, in each of the five instances of comparison. When the express trust is used as an agency of commerce it is commonly known as a business trust. Because of its development and common use in the State of Massachusetts it is often called a Massachusetts trust, and because it finds its basis in the law of contract and does not depend upon any statute for its existence it is sometimes called a common law trust. It may be stated as a general proposition that anyone competent to contract may make such disposition of the legal title to his property as he pleases, may annex such conditions and limitations to its enjoyment as he chooses, and may vest it in trustees for the purpose of carrying out his intention. He has the same power to

create trusts as he has to alienate the legal title to his property. (1 Perry on Trusts, — 5th ed. — sec. 28.) Since 1880 the legality of the business trust has been recognized in England and for more than forty years it has been in use in Massachusetts. Sears, in his work on Trust Estates as Business Companies, (2d ed. sec. 19,) says: 'It is by no means novel or unusual that trust estates should be created either for embarking in a new business or continuing an old one, and the legal and equitable status of such estates are well defined, as also the relations they and their trustees and their *cestui que trust* bear to each other and to third persons with respect to their acts and contracts arising in the course of the existence of such estates.' Wrightington, in his work on Unincorporated Associations and Business Trusts (2d ed. sec. 4,) says: 'The newest law today concerns the application of old principles to the new problems created by associations for profit, and trusts, and the distinctions between these two forms of business organization.' If the declaration of trust involved in this case creates a trust and there is nothing in it which is against the public policy of this State, then the decision of the case depends upon the application of well established principles of the law of contracts and trusts. Because a new use is being made of the trust does not mean new principles of law are to be applied in determining the rights of the trustees, the *cestui que trust* or persons dealing with the trustees.

"The business trust is fundamentally different from the corporation. The stockholders of the corporation control, through the board of directors, the business of the corporation, while the unit holders of a business trust have no mutual rights and obligations and do not control the action of the trustees. The trustees of a business trust are analogous to the directors of a corporation in that both are the managers of the business

of their respective institutions but there is an essential distinction between a trustee and a director, founded on the very nature of things. A trustee is the holder of the legal title of the trust estate and deals with it as principal, subject only to an equitable obligation to account to the beneficiaries of the trust estate. A director does not deal with the funds of the corporation as principal but deals with them as the agent of the company of which he is a director and for which he is acting. A trustee is personally liable on his contract, but a director is not as long as he acts within his authority. A trust is no entity at all, while a corporation is an artificial person. A trust is an estate the legal title to which is vested in a trustee and the equitable title to which is held by individuals who bear no contractual relations among themselves. A corporation is an artificial body composed of individuals who own its capital stock and whose rights and liabilities are fixed by statute.

''There are also essential differences between a business trust and a partnership, but there are times when it is difficult to determine whether the declaration of trust relieves the trustees and shareholders from liability as partners. A partnership is, in effect, a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his co-partner. (*State v. Cosgrave,* 36 Ida. 278, 210 Pac. 393; *Fougner v. First Nat. Bank of Chicago,* 141 Ill. 124.) Where under the declaration of trust the unit holders retain control over the trustees and have authority to control the management of the business the partnership relation exists. (*Frost v. Thompson,* 218 Mass. 360, 106 N. E. 1009; *Hart v. Seymour,* 147 Ill. 598; Dunnon Business Trusts, sec. 140 *et seq.*) On the other hand, where the declaration of trust gives the trustees full control in the management of the business of the trust and the certificate holders are not associated in carry-

ing on the business and have no control over the trustees, then there is no liability as partners. (*Smith v. Anderson,* 15 Ch. Div. 247; *Williams v. Inhabitants of Milton,* 215 Mass. 1, 102 N. E. 355; *Mayo v. Moritz,* 151 Mass. 481, 24 N. E. 1083; *Rhode Island Hospital Trust Co. v. Copeland,* 39 R. I. 193, 98 Atl. 273; *Betts v. Hackathorn,* 159 Ark. 621, 31 A. L. R. 847; *Kramer & Co. v. Cummings,* 225 Ill. App. 26; *Home Lumber Co. v. Hopkins,* 107 Kan. 153, 10 A. L. R. 879.)''

We think we need go no further than the above authority to show that the agreement between the parties herein was a partnership. By the terms of said contract they did not exempt themselves nor did they make any mention of exempting themselves from personal liability. When the property was conveyed to the trustee they retained control over the trustee and the management of the business in relation thereto. As we view the situation, it seems to have been nothing more than the association of several parties for the purpose of carrying on a business and, under the law, their liability was a joint and several one. The appointment of a managing committee did not exempt them from any liability as said committee was merely an agent of the individuals composing the company and the managing committee was under the control of the individuals themselves so far as transaction of business elections, removals, etc. In our opinion there was nothing contained in said instrument of agreement which would relieve any of the members from their liability in this association or from complying with the rules governing that of a partnership. This being true, it follows that the claim against the estate of Conover was properly filed in the probate court and that court properly allowed it as a claim against the estate. Upon appeal to the circuit court that court erroneously decided contrary to the probate court and disallowed the claim,

For the reasons herein given the judgment of the circuit court is reversed and the cause is remanded for a new trial with directions to proceed in harmony with the views herein expressed.

*Reversed and remanded with directions.*

HEBEL, P. J., and HALL, J., concur.