## In re NATIONAL REALTY TRUST.

### SULLIVAN v. MOSSER et al.

### No. 9506.

Circuit Court of Appeals, Seventh Circuit.
March 2, 1948.

KERNER, Circuit Judge, dissenting in part.

Harry A. Biossat, of Chicago, Ill., for appellant, George D. Sullivan.

Carl Wesley Mulfinger, Delta I. Jarrett, James H. Deming, and J. Edgar Kelly, all of Chicago, Ill., for appellee, Stacy C. Mosser.

Charles F. Short, Jr., and Ross Langdon, both of Chicago, Ill., Roger S. Foster, Sol., Sidney H. Willner, Associate Sol., and Aaron Levy, Atty., Securities and Exchange Commission, all of Philadelphia, Pa., Thomas B. Hart, Regional Administrator, G. Gale Roberson and John I. Mayer, Attys., Securities and Exchange Commission, Donald N. Clausen, Herbert W. Hirsch, and Norman A. Miller, all of Chicago, Ill., for appellee, Stacy Mosser.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is a proceeding instituted under Sec. 77B of the Bankruptcy Act, Title 11 U.S.C.A. § 207, sub. a, in which an involuntary petition for reorganization of the debtor was approved May 24, 1935.[1] Subsequently, certain sections of Chap. 10, Title 11 U.S.C.A. § 501 et seq., were made applicable.[2]

The debtor is a common law trust formed under the laws of Illinois, pursuant to a Declaration of Trust dated July 2, 1930. During the course of the reorganization proceedings vacancies occurred in the office of the debtor's trustees and the court on September 16, 1947 entered an order appointing Leslie H. Klawans and Benjamin G. Kilpatrick as such trustees, with all the powers, duties and obligations provided in the Declaration of Trust. George D. Sullivan, the only trustee under the said Declaration, appeals from such order.

While numerous issues are raised and discussed before this court, we are of the view that the sole question for decision is whether the District Court had the jurisdiction and power to enter the order in controversy.

We think it is unnecessary to indulge in any extended recitation of the facts of this long and involved proceeding. It will be sufficient to refer to those which bear upon the question for decision. The Declaration of Trust, so far as here material, provides:

"The Trustees hereunder shall be three (3) in number until a different number shall be fixed by the Trustees as hereinafter provided, provided, however, that there shall never be less than two (2) Trustees hereunder. The Trustees then in office at any time and from time to time may appoint new and additional Trustees or remove any existing Trustee with or without cause. * *

"In case of any vacancy of the Trustees occurring by the death, resignation, removal or disability or for any other reason, a new Trustee or Trustees shall be appointed by the remaining Trustees. Upon the filing with the then acting Depositary of this Declaration of Trust of (1) a certificate of such election signed by the President and Secretary of the Trust and (2) a written acceptance of this Trust signed by the newly elected Trustee, title to the trust estate shall vest in such newly elected Trustee together with the Trustee or Trustees then holding office without any further act or conveyance."

The instant controversy arose because of a situation called to the attention of the court by a petition filed July 28, 1947, by George Sullivan and J. Frank Higgins. The petition recited, among other things, the provisions of the Declaration of Trust relative to the manner of selecting trustees, and set forth in detail those who had served as trustees and successor-trustees

[1] On this date, we have in 7 Cir., 166 F.2d 632, affirmed an order entered in the same reorganization proceeding, refusing to vacate the order of May 24, 1935, approving the petition for reorganization.

[2] Section numbers herein used, unless otherwise noted, refer to Chap. 10, Title 11 U.S.C.A.

from the inception of the trust. It is unnecessary to mention those who served in the earlier years of the trust. It is sufficient to note that on December 20, 1939, Paul Darrow, George Sullivan and Max Levy were elected and became the trustees. Darrow at that time was also serving as the court's trustee, in possession of the debtor's property. Subsequently he resigned and has since been charged with malfeasance in office. Darrow also resigned as the debtor's trustee, and Max Levy died, which left George Sullivan (appellant) as the sole trustee. The petition alleges:

"That on June 9, 1946, that petitioner, George Sullivan, as the sole surviving trustee, held a meeting at which J. Frank Higgins was elected as Trustee, president and treasurer of said Trust, and that your petitioner, George Sullivan, and your petitioner, J. Frank Higgins, now constitute the Trustees of said Trust."

The stated purpose of the petition was to obtain the approval and consent of the court to the election of Higgins as trustee "and for such other relief as to the court may seem pertinent and proper."

We mention this general prayer for relief, as appellees place great reliance thereon as the source or basis for the court's power to appoint trustees. Objection was made to the prayer of the petition, and the court indicated that it would not approve of the appointment of Higgins, although no formal order was entered to that effect. The court suggested that the parties get together and agree on a number of persons who would be satisfactory to all concerned, from which the court might appoint two. The parties did meet and agreed on five names, or at any rate some of the parties so agreed, which names were submitted to the court, including the names of the two persons subsequently appointed. Much is said concerning what transpired in connection with the selection and submission of these names, and it is intimated that counsel for Sullivan was and is estopped from questioning the court's authority, either below or on this appeal. We need not attempt to unravel the somewhat confused record in· this respect because, in our view, it is immaterial. It does appear that counsel for Sullivan participated in some of the conferences during which the names were selected, but it also appears that he at all times insisted that the court was without jurisdiction or at any rate without power to name trustees.

In support of the order, appellees contend that the court, after refusing to confirm the appointment of Higgins, had the power under the prayer for general relief to appoint anybody it desired. The court must have been of this view because it refused a request by Sullivan's counsel to withdraw his petition. Appellees argue in one breath that under the Declaration of Trust Sullivan was without power to select Higgins as a co-trustee and in the next breath that his request for court approval of such election invested the court with jurisdiction. We agree that under the Declaration Sullivan as the sole surviving trustee was without authority to elect a co-trustee, and that Sullivan had no authority in his official capacity to represent the trust estate in the management or conduct of its business. Thus, assuming that Sullivan was without authority to elect a co-trustee, it would seem that he was also without authority to seek court approval, and such approval if it had been obtained would have been of no effect.

On the other hand, if Sullivan had the authority under the Declaration to select a co-trustee, no court approval would have been required. In arguing to the contrary, appellees rely upon Sec. 191, which provides:

"A trustee or debtor in possession may employ officers of the debtor * * *. No person shall become an officer or director of the debtor, to fill a vacancy or otherwise, without the prior approval of the court."

This section by its terms applies only where the debtor is left in possession of its property. It has been so held. In re J. P. Linahan, Inc., 2 Cir., 111 F.2d 590. Obviously, the purpose of this requirement is to give the court some control over the debtor when left in possession of its property, because in that instance the debtor becomes the court's trustee. Sec. 588; In re Wil-Low Cafeterias, Inc., 2 Cir., 111

F.2d 83, 84; In re Walker et al., 2 Cir., 93 F.2d 281, 283.

There is no provision in the Bankruptcy Act which requires court approval of a debtor official elected to fill a vacancy where the debtor has been deprived of and its property has been placed in the possession of a court trustee, as was done in the instant situation. Sullivan, being without authority to act either on behalf of the debtor or the certificate holders, could not affect their rights by his petition, and neither could he confer either expressly or by implication any power or authority on the court which it did not otherwise possess. And it is immaterial whether the court approval sought by Sullivan was occasioned by an erroneous view of the law or as a matter of precaution. As already stated, Sullivan's counsel denies that he agreed to the action of the court in appointing trustees, and we think the record sustains him in that contention; but even if he had, such agreement likewise would have been of no effect because he, as well as his client, Sullivan, had no authority to bind either the debtor or its certificate holders.

While Sullivan's petition did not confer jurisdiction or enhance the court's power with reference to the appointment of trustees, it did serve the purpose of calling to the attention of the court the predicament with which the debtor was confronted, that is, it was without officials to act on its behalf and without means provided in the Declaration of Trust for their selection. That the debtor was an essential and necessary party at every step of the proceeding goes without saying. In the absence of officers authorized to represent it, the proceedings became stymied. The purpose of the Reorganization Act and the objective sought to be accomplished by the proceeding would thus have been thwarted. When the impotency of the debtor to proceed for the want of authorized officials was called to the attention of the court, it is unreasonable to think that it was powerless to overcome the existing impasse. And we think it is immaterial in what manner the situation was called to the attention of the court, whether by the petition of Sullivan or by some other

interested party, and whether presented formally or otherwise. We conclude that the court was not without power in furtherance of the reorganization proceedings to devise ways and means for the selection of trustees duly authorized to represent the debtor. Case v. Los Angeles Lumber Co., 308 U.S. 106, 125, 60 S.Ct. 1, 84 L.Ed. 110; American United Mutual Life Insurance Co. v. City of Avon Park, 311 U.S. 138, 145, 61 S.Ct. 157, 85 L.Ed. 91, 136 A.L.R. 860.

A more serious question is whether the court could exercise such power without notice to the certificate holders and without according them an opportunity to be heard. It is the generally established rule in Illinois, and we think elsewhere, that in all actions concerning trust property the beneficiaries are necessary parties. Illinois National Bank of Springfield v. Gwinn, 390 Ill. 345, 61 N.E.2d 249, 159 A.L.R. 468; People's Bank & Trust Co. of Rockford v. Gregory, 347 Ill. 397, 398, 399, 179 N.E. 856; Martin v. Frank, 259 Ill. App. 417, 424. The rule has been expressly applied to the appointment of successor-trustees. Mason v. Bloomington Library Ass'n, 237 Ill. 442, 450, 86 N.E. 1044, 15 Ann.Cas. 603; Butler v. Butler, 164 Ill. 171, 177, 45 N.E. 426. Thus, if an action had been instituted in a chancery court for the appointment of trustees, it is plain that the certificate holders would have been necessary parties.

No question is raised and we assume there is none but that the instant common law trust is subject to reorganization under Sec. 77B, as amended. Sec. 506(12), 11 U.S.C.A., states that stock "shall include membership, shares, and similar interests in a debtor, certificates and other evidences of such membership, shares or interest, and voting-trust certificates." Thus it would appear that the jurisdiction, power and authority of the court over a trust debtor is no different than over a corporate debtor. Conversely, the same rights and protection are afforded in one instance as in the other. More specifically, the trust stands in the same position as the corporation, the trustees in the same position as the corporate officials, and the certificate holders in the same

position as the corporate stockholders. See Pope & Cottle Co. v. Fairbanks Realty Trust, 1 Cir., 124 F.2d 132.

Sec. 606 provides:

"The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter."

The Supreme Court, in Price v. Gurney, 324 U.S. 100, page 104, 65 S.Ct. 513, page 515, 89 L.Ed. 776, in discussing the rights of stockholders in a corporate proceeding, stated:

"Thus the rights which the stockholders are granted by the Act arise after the proceedings have been instituted. Thereafter they need not be represented solely by the debtor corporation. They may appear in their own right. Indeed, the Act contemplates their participation in the proceedings for the protection of such equity as they may have."

In Re South State Street Bldg. Corporation, 7 Cir., 140 F.2d 363, 366, the court stated:

"The reorganization of a corporation in bankruptcy is a matter between the corporation and its stockholders on the one hand, and its creditors on the other."

On the same page, referring to Sec. 606, the court stated:

"Anyone within this category of interested persons is entitled to come into the court to be heard. The forum is open to them for the purpose of settling the affairs of the debtor and its creditors."

True, by Sec. 511, the court is given "exclusive jurisdiction of the debtor and its property, wherever located." The jurisdiction thus conferred, however, does not empower the court to enter an order affecting the rights of interested parties, including stockholders, without notice and a hearing. In fact, a reading of the Reorganization Act, particularly the Chandler Act, shows the meticulous care which Congress exercised in requiring that notice be given at every step of the proceedings wherein the rights of interested parties might be affected. See Secs. 516(3), 561, 567(6), 571, 590, 597 and 622. Sec. 520

prescribes where notice is required the time and the manner in which it shall be given.

Stockholders of a debtor corporation are not only entitled to notice of a hearing on matters which may affect their interests, but they are also entitled to select officials with authority to represent the debtor corporation. As was said in Re Bush Terminal Co., 2 Cir., 78 F.2d 662, 664:

"* * * the debtor is given the right to be heard on all questions. Obviously, the stockholders should have the right to be adequately represented in the conduct of the debtor's affairs, especially on such an important matter as the reorganization of the debtor. Such representation can be obtained only by having as directors persons of their choice."

Further, the court on page 665 of 78 F.2d stated:

"If the right of stockholders to elect a board of directors should not be carefully guarded and protected, the statute giving the debtor a right to be heard or to propose a plan of reorganization could not truly be exercised, for the board of directors is the representative of the stockholders."

This court has expressed a similar view. In re Plankinton Bldg. Co., 7 Cir., 138 F.2d 221, 222. See also In re J. P. Linahan, supra, 111 F.2d 592.

■ We are unable to discern any basis for holding that the right of the certificate holders in the instant situation to a voice in the selection of trustees to represent the debtor is any different than the right of stockholders where the debtor is a corporation. The certificate holders in reality are the owners of the debtor's property and are the persons most vitally affected by the reorganization proceedings. It does not meet the situation to argue as appellees do that the court has appointed two trustees capable and qualified to represent the debtor. The point is that the certificate holders were given no voice in their appointment, not even an opportunity to be heard in objection thereto. Nor is there any merit in the argument that nothing has been taken from the certificate holders because they were not entitled under the Declaration of Trust to elect trustees. It can hardly be doubted that

they did have a right in the absence of the instant proceeding to seek relief in a court of chancery where they would have been necessary parties, with a right to be heard. The equity power of the bankruptcy court may be less, but in any event it cannot be greater than that of an ordinary chancery court.

From the fact that the court had the power to eliminate the stalemate with which it was confronted, it does not follow that it could exercise such power in disregard of the rights of the certificate holders. The incongruity of the court's action is illustrated by noting that the court trustee has pending a plan of reorganization which the debtor is entitled to resist. Thus a situation has been created wherein the court's own trustees would represent both sides of the contest. This would do violence to the protection with which a debtor is clothed in a reorganization proceeding, which is specifically designed so that it may have an opportunity to contest every step in the proceeding against it. More than that, it would eliminate any voice which the certificate holders might have in the selection of officials charged with the responsibility of protecting their interest.

While we hold that the court had the power to meet the situation which existed by reason of the absence of officials to represent the debtor, we also hold that such power was erroneously exercised. It is not for us to prescribe the ways and means which the court must employ in the proper exercise of its power other than that the certificate holders should be given a voice in the appointment of trustees. As a minimum requirement they should, after notice, have an opportunity to be heard in any matter relative to such appointment.

The order appealed from is, therefore, reversed, with directions that it be vacated and that any further proceedings relative to the selection of trustees for the debtor be had in accordance with the views herein expressed.

KERNER, Circuit Judge (concurring in part and dissenting in part).

In the District Court appellant did not raise the question or make any point of the fact that no notice had been given to the cestuis que trustent. His only contention was that the court lacked power to name the trustees. In this court he argues that the action of the court deprived the certificate holders of their rights, and that a bankruptcy court, while possessing equitable powers, is not a general court of equity. It is a creation of a Congressional statute which is the source of its power and limitation on that power. In other words, if the power to appoint trustees is not in the Act, the bankruptcy court does not have such power.

From the language of Case v. Los Angeles Lumber Co., 308 U.S. 106, 125, 60 S.Ct. 1, 84 L.Ed. 110, in which the Supreme Court interpreted the Act, it is clear that a bankruptcy court has "'exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section.'" Moreover, once the court acquires control, it "is then pervasive." In explanation of this general rule, the Court, in a lengthy footnote at page 126 of 308 U.S., at page 12 of 60 S.Ct., states:

"These powers embrace not only the *specifically enumerated* [emphasis added] powers contained in § 77B but also 'all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature.' * * *"

Later, in American United Mutual Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 145, 61 S.Ct. 157, 161, 85 L.Ed. 91, 136 A.L.R. 860, the Court said: "'A bankruptcy court is a court of equity, § 2, 11 U.S.C. § 11, 11 U.S.C.A. § 11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act. * * * A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest.'" See also Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890, and Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281.

Appellant accepts this legal proposition as to the general powers of a bankruptcy court but disputes its applicability as to the specific act of appointing trustees of a common law trust prior to the approval of a plan of reorganization, which he contends is contrary to the method of selection of trustees provided in the Declaration of Trust under consideration.

Article II of the Declaration of Trust provides that:

"The Trustees hereunder shall be three (3) in number until a different number shall be fixed by the Trustees as hereinafter provided, provided, however, that there shall never be less than two (2) Trustees hereunder. * * *

"In case of any vacancy of the Trustees occurring by the death, resignation, removal or disability or for any other reason, a new Trustee or Trustees shall be appointed by the remaining Trustees. * * * *"

Upon the resignation of Paul Darrow and the death of Max Levy, trustees under the trust, the remaining trustee, appellant, elected J. Frank Higgins as trustee of the Trust. Appellant and Higgins thereupon petitioned the District Court to approve the action which, it was alleged, was in conformance with the terms of the Declaration of Trust. Upon a hearing the petition was rejected. Subsequently, the court approved two trustees, neither of whom was Higgins. It is immaterial if the court approved the trustees upon the general prayer for relief in appellant's petition, because if he had the power he could approve them under the general jurisdictional authority of the bankruptcy court.

Upon a fair reading of the Declaration of Trust it is clear that the method of selecting trustees had been vitiated by the resignation and death of two of the trustees. The Declaration expressly provided that "there shall never be less than two Trustees." While it is true the trustees were to be appointed by the remaining trustees, that condition was non-existent, and appellant as the sole remaining trustee did not possess the power under the Declaration. An impasse was created which seemingly could only be resolved by the court's exercise of its equitable powers.

In rejecting the petition to appoint Higgins, Judge Holly recognized the dilemma when he stated that he had the power to appoint the successor trustees because the method prescribed by the Declaration had been obviated. Such action appears to be clearly in accord with the language of Young v. Higbee Co., supra, in which the Supreme Court said 324 U.S. at page 214, 65 S.Ct. at page 599, 89 L.Ed. 890: "Courts of bankruptcy are courts of equity and exercise all equitable powers unless prohibited by the Bankruptcy Act." This, in accord with the cases previously cited, is an affirmative power subject only to ennumerated restrictions in the Act. Appellant is incorrect in his anaysis of the Act when he argues that if the specific power is not in the Act then the court is precluded from exercising it. It is unquestioned that a bankruptcy court is one of limited jurisdiction and must look to the Act for its source of power, but its jurisdiction is unlimited in respect of its power over proceedings in bankruptcy specifically made subject to its jurisdiction by the Act. 6 Am. Jur. p. 531.

The District Court had jurisdiction of the debtor. The method provided for the administration of its property had broken down. By the terms of the Declaration, which he was purporting to follow, appellant was without power to appoint successor trustees. Nevertheless, the District Court held a hearing on Mr. Higgins' qualifications. For reasons concededly within the discretion of the District Court, he was rejected. The status of the debtor, then, admittedly was property without administration—a ship without a crew. To remedy this Judge Holly suggested that the parties in interest agree on the names of two persons to fill the vacancies. Appellant was represented and five names were selected and submitted to the court. From this list two were selected and approved by the court.

Appellant says that by appointing the two trustees the court dominated and deprived the debtor of any inclination the debtor might otherwise have had to object to the plan of reorganization proposed by the court trustee. In support of his position he cites In re Bush Terminal Co., 2 Cir.,

78 F.2d 662; In re Plankinton Bldg. Co., 7 Cir., 138 F.2d 221; and In re J. P. Linahan, Inc., 2 Cir., 111 F.2d 590. These cases are not in point. They stand for the proposition that when corporate property is the subject of bankruptcy jurisdiction the shareholders as the real parties in interest ordinarily should not be deprived of their right to meet and elect a board of directors before a plan of reorganization has been approved.

The trust involved in this case is a true business or common law trust. It is complete and comprehensive, and while comparable to a corporation it is fundamentally different. The stockholders of a corporation control the board of directors but the beneficiary holders of a common law trust are not associated in carrying on the business; they have neither the mutual rights nor obligations and do not control the action of the trustees, Schumann-Heink v. Folsom, 328 Ill. 321, 159 N.E. 250, 58 A.L.R. 485; In re Estate of Conover, 295 Ill.App. 443, 14 N.E.2d 980, and once the beneficiary holders have elected the original trustees, they are not in control and cannot select the successor trustees.

In our case appellant as trustee is interested in the debtor and in the preservation of the property of the trust, and the Declaration expressly provides that "there shall never be less than two Trustees." It was a proper case, under the circumstances here appearing, for the appointment by the court of the two additional trustees upon the application of any person interested, since a court of equity will not permit a trust properly created to fail for want of a trustee, but will appoint a trustee where no other provision for the appointment exists. Churchill v. Marr, 300 Ill. 302, 311, 133 N.E. 335. In this situation, the court having jurisdiction of the debtor was well within its rights in taking the action it did.

The argument that the action of the District Court deprived the certificate hold-ers of their rights in the trust is likewise not well taken. As already noted, under the Declaration of Trust the certificate holders had no right to a voice in management or in the selection of successor trustees, and they did not acquire that power when the provision to select trustees under the Declaration became inoperative. In this situation, the trial judge in the exercise of his equitable jurisdiction in the furtherance of the proper administration of the reorganization was empowered to fill the vacancies. Churchill v. Marr, supra, 300 Ill. 311, 133 N.E. 335; French v. Northern Trust Co., 197 Ill. 30, 38, 64 N.E. 105; and Attorney General v. Barbour, 121 Mass. 568, 574. His powers in that regard are broad and varied and are ample for the exigencies of varying situations. American United Mutual Life Ins. Co. v. City of Avon Park, supra, 311 U.S. 146, 61 S.Ct. 162, 85 L.Ed. 91, 136 A.L.R. 860. The trial judge, by filling the vacancies, deprived no one of any right but simply appointed trustees in order to render secure the debtor's right to be heard in the reorganization proceedings.

And the fact that no notice was given to the certificate holders did not render the action of the court in appointing the two trustees void. True, in most cases, it is proper to call before the court those immediately interested so that they may be heard in the appointment of new trustees, still in a case such as this, it is a rule chiefly of convenience. Sanders v. Hall, 10 Cir., 74 F.2d 399, and cases cited. See also In re Jones' Estate, 236 Iowa 563, 19 N.W.2d 611. But be that as it may, it was within the discretion of the court since a reorganization proceeding is a proceeding in rem. The formal notices required by Chapter X of the Bankruptcy Act afford information of the proceeding to creditors and holders of equity interests and the means of participating are readily available to them, if they evince an interest in the proceeding.

I would affirm the order.