(No. 26501.— )
GEORGE L. PORTER et al., Appellants, vs. BERTHA P. CUTLER et al.—(BERTHA P. CUTLER, Appellee.)

*Opinion filed September. 21, 1942.*

VAUGHT, FOREMAN & CLEARY, (ORVILLE N. FOREMAN, and EDWARD W. CLEARY, of counsel,) for appellants.

HAROLD L. REEVE, JOHN MANN, JOHN F. McCARTHY, ELMER M. LEESMAN, and ROSWELL B. O'HARA, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

George W. Solomon departed this life testate in 1918. Under the terms of his will he disposed of a large amount of real estate not involved in this case, and in the fourth clause thereof he devised a certain tract of real estate as follows: "I will, devise and bequeath unto my daughter, Flora Cashman * * * To have and to hold unto the said Flora Cashman for and during the term of her natural life, the remainder to the heirs of the said Flora Cashman living at the death of the said Flora Cashman."

Flora Cashman died February 21, 1936. In April of 1923 Flora Cashman and her husband, George Cashman, mortgaged the real estate, given to her in said clause of the will, to the Trevett-Mattis Banking Company to secure an indebtedness of $5500. The mortgage was thereafter foreclosed and the property purchased at foreclosure sale by the Trevett-Mattis Banking Company. On January 25, 1930, the master in chancery executed a deed to the Trevett-Mattis Banking Company; on February 1, 1930, said company by special warranty deed conveyed the property to John W. Trevett; on February 3, 1930, John W. Trevett, by quitclaim deed, reconveyed the property to the Trevett-Mattis Banking Company; on October 12, 1934, by quitclaim deed, said company conveyed the property to the defendant-appellee, Bertha P. Cutler. She claims the entire title in fee simple by reason of the series of transactions above set forth.

At the time of her death Flora Cashman left no children or descendants of any children, but her heirs were George W. Cashman, her husband, and several nephews and nieces.

The appellants filed their complaint for partition, alleging that by his will George W. Solomon devised the real estate in controversy to his daughter, Flora Cashman, for life, and the remainder to those persons who would be her heirs living at her death. The complaint further alleged that by reason of conveyances from the other heirs and under the terms of the will of George W. Solomon, they were each seized of an undivided 11/24ths of the real estate, that the defendant, Dempsey Solomon, was seized of an undivided 1/12th of the said real estate, all as tenants in common. The complaint further set forth that the appellee, Bertha P. Cutler, and her husband were unlawfully in possession of the real estate. The prayer of the petition asked that the real estate be partitioned and that Bertha P. Cutler and her husband be required to

account for the rents. All of the defendants were defaulted with the exception of Bertha P. Cutler. She filed her second amended answer denying that by virtue of the will of George W. Solomon, or by any other means, did the appellants or the defendant Dempsey Solomon ever acquire any interest whatsoever in said real estate. The answer further alleged that under and by virtue of the terms of the will of George W. Solomon, Flora Cashman took the fee simple title to said real estate.

Briefly, the appellants contend that Flora Cashman took only a life estate by the fourth clause of her father's will, and therefore, the mortgage to the Trevett-Mattis Banking Company, and all further proceedings based thereon, including the deed to Bertha P. Cutler, were null and void.

The appellee insists that the devise to Flora Cashman came within the rule in *Shelley's* case, and that by reason thereof, she acquired a fee simple title to the real estate.

The sole controversy in the case is over the construction of the fourth clause of the said will, and the only issue on this appeal is whether the rule in *Shelley's case* is applicable to the limitations of the fourth clause of said will.

The appellants filed a motion to strike the second amended answer of Bertha P. Cutler, and, on hearing, the court overruled such motion to strike, and the appellants electing to stand on their motion, the court found the issues for the appellee, Bertha P. Cutler, and dismissed the complaint for lack of equity. In simple terms the chancellor held that Flora Cashman, by the will, took a fee simple estate in the land.

Whatever else may be said about the rule in *Shelley's case*, it is and has been applied in Illinois as a rule of property ever since the decision in the case of *Baker* v. *Scott*, 62 Ill. 86. Appellants earnestly maintain that the rule can have no application to the case at hand because the word "heirs," as used in the limitation of the remainder, is clearly

not used in its technical sense as meaning an undeveloped aggregate or class to take in succession by descent from generation to generation, but on the contrary, is restricted to a definite group of persons who must be living at a particular point of time in order to take. In support of this contention the appellants rely largely on *Churchill* v. *Marr,* 300 Ill. 302; *Hollenbaugh* v. *Smith,* 296 id. 558; *Bunn* v. *Butler,* 300 id. 269; and *Hauser* v. *Power,* 356 id. 521.

In the *Churchill case* the testator gave his wife and children the income of his estate for their lifetime, with directions to the executors to collect rents and profits after the death of any child until the death of the last surviving child, when the executors were to sell the property and distribute the proceeds "equally among the surviving heirs of my children." There it was held that the rule in *Shelley's case* did not apply to give the children a fee, as the word "heirs" is not used to designate the whole line of inheritable succession in each child, but only to designate the remaindermen who are to take at the death of the last surviving life tenant. In such case the estate subsequent to the life estate takes effect as a contingent remainder to the heirs, who are then living, of all the children who have died.

In the *Hollenbaugh case, supra,* the devise was to a daughter and her husband for and during their lives and the life survivor of them, with remainder after the death of the survivor, to the heirs-at-law of the daughter to be shared by them according to the laws of descent of the State of Illinois then in force. The court held that the rule in *Shelley's case* did not apply, since the heirs of the daughter were to be determined as of the date of the death of the survivor, and that at such time the daughter's heirs might be different than at the time of her death.

In the case of *Bunn* v. *Butler, supra,* the testator devised his real property to certain trustees with directions to permit his son "to occupy, possess, use and enjoy said tracts of land * * * during the full term of the natural life

of my said son * * * and upon the further trust after the death of my said son * * * the said Trustees, or the survivor, will convey said real estate to the heirs of the body of the said Henry Wirt Butler [son] surviving him, and upon the further trust if my said son * * * should die and leave no heir or heirs of his body surviving him, said Trustees, or the survivor, will convey said tracts of land, with all appurtenances, to my general heirs." The court held that the manifest intention of the testator expressed in this will was to have the trustees convey the fee to one of two particular classes, describing them, after the life estate in his son terminated. It was held, therefore, that the words "the heirs of the body of the said Henry Wirt Butler surviving him" were words of purchase and not words of limitation; that they described the persons who are to take the estate, and not the estate to be taken.

In *Hauser* v. *Power, supra,* the testator devised his real estate to his son for life "and at his death to the heirs of his body" with a devise over to the testator's heirs if the son died "leaving no heirs of his body him surviving." The court held the words "heirs of his body" must be construed as words of purchase and not of limitation, as the devise over in case of death without heirs of the body clearly negatives any intention of creating an indefinite line of descent.

All of these cases are readily distinguishable from the present case. Either the date at which the heirs of the life tenant were to be determined is such that it does not designate the whole line of inheritable succession, or the limitations on the words "heirs of the body" show a plain intention on the part of the testator to use them as words of purchase and not as words of limitation. In the devise under consideration the words "heirs of the said Flora Cashman living at the death of the said Flora Cashman" include all those persons upon whom the law would in the first instance cast inheritance upon the death of Flora Cash-

man. Appellants insist that such a construction would definitely exclude unborn persons and, therefore, would not comply with the rule in *Shelley's case;* that the rule has no application unless "heirs" is used in its technical sense as meaning the whole line of inheritable succession from generation to generation. That construction is not sound. Under our statute a posthumous child receives the same share of his ancestor's intestate estate as if he had been born in his father's lifetime, but there is no possibility of that situation occurring under the facts as they exist in this case. We do not deem that the words "living at the death of the said Flora Cashman" would in any manner take the devise out from the operation of the rule in *Shelley's case,* because Flora Cashman could have no heirs other than heirs in being at the time of her decease.

In *People* v. *Emery,* 314 Ill. 220, a conveyance was made to trustees, with directions to pay the rents and profits of an estate to the grantor's daughter during her life, and at her death to convey the premises· to such persons as might inherit her real estate as heirs-at-law. We held that such instrument conveyed an equitable estate in fee to said daughter under the rule in *Shelley's case,* because the same deed creates both an equitable life estate and the equitable remainder, and there was sufficient designation of heirs to apply the rule.

We have been presented with no authority which has interpreted the word "living" or similar adjectives used to qualify or modify the word "heirs" as having the effect of narrowing that word so as to mean children, issue, or descendants, unless there are other words in the context which clearly show such intention.

While it was no doubt the intention of the testator in using the words "heirs of the said Flora Cashman living at the death of the said Flora Cashman" to create a class of purchasers, the rule in *Shelley's case* is a rule of law,

whose operation is independent of the intention of the grantor when the requisites of the rule exist, and cannot be evaded however distinctly the intention to evade it appears. *People* v. *Emery, supra.*

We believe the decree presents a correct construction of the fourth clause of the will in this case.

The decree of the circuit court is affirmed.

*Decree affirmed.*